WILLIAM E. DEMAREST, Appellant, v. THE MAYOR, ALDER-
MEN AND COMMONALTY OF THE CITY OF NEW YORK,
Respondent.

The enactment of the provision of the New York city charter of 1873 (§ 2,
chap. 335, Laws of 1873), abolishing the board of assistant alderman after
January 1, 1875, and declaring the board of aldermen to be thereafter
the common council, was a valid exercise of legislative authority.

The effect of that provision was not only to abolish the board, but to abolish
the office of assistant alderman.

As to whether the provisions of said act, providing for minority representa-
tion in the board of aldermen are valid or not, *quære.*

If invalid, they do not affect the validity of the said provision as to assist-
ant alderman.

*It seems,* that the corporation of the city of New York is a public corpora-
tion, and as such, its charter is always subject to legislative amendment
or alteration.

The provision of the State Constitution (§ 18, art. 1), providing that nothing
contained in the Constitution "shall annul any charters to bodies politic
and corporate, made or granted by or under the king of Great Britain
prior to October 14, 1875," is not a restraint upon legislative power, its
object was simply to leave the charters referred to intact, as far as the
operation of the Constitution itself was concerned.

(Argued June 7, 1878; decided June 18, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court, in the first judicial department, affirming a
judgment in favor of the defendant, entered upon an order
sustaining a demurrer to plaintiff's complaint.

The nature of the action and the facts are set forth suffi-
ciently in the opinion.

*Wilson S. Wolf,* for appellant. The establishment by the
act of 1873 (chap. 335, § 4) of the minority system of repre-
sentation and mode of electing the board of aldermen was in
direct conflict with article two, section one of the State Con-
stitution. (Const. of N. Y., art. 1, § 1; *Taylor* v. *Porter,* 4
Hill, 140; *Norman* v. *Heist,* 5 Watts & Serg., 171; *Hoke*
v. *Henderson,* 1 Dev. [N. C.], 137; *Dash* v. *Vankleeck,* 7

Johns., 477; *Corning* v. *Greene*, 23 Barb., 33; *Bank, etc.*, v. *Brown*, 26 N. Y., 467; *Wynehammer* v. *The People*, 3 Kern., 394; *The People* v. *Hurlburt*, 24 Mich., 83; Political Code, 507; 8 St. Trials, 1047–1049.) The minority system being unconstitutional the act of 1873 was a nullity, and so far as the common council was concerned the preceding system under which plaintiff was elected is still in force. (Laws 1870, chap. 137, § 4; *Meagher* v. *The County*, 5 Nev., 250; *Marbury* v. *Madison*, 1 Cranch, 181.) Plaintiff was properly in court, his private rights having been invaded by the act of 1873. (*Ex parte Heath*, 3 Hill, 42; *Doolittle* v. *Suprs. etc.*, 18 N. Y., 162; *Newell* v. *People*, 7 id., 9–109; *People* v. *Marrel*, 21 Wend., 563–584; *People ex rel. Demarest* v. *Atty.–Genl.*, Ct. Apps. Dec., 1876; *Demarest* v. *Wickham*, 63 N. Y., 325.) The salary annexed to a public office is incident to the title to the office, and not to its occupancy and exercise. (*Dorsey* v. *Smith*, 28 Cal., 21–44; 37 id., 193; *Meagher* v. *County*, 5 Nev., 244; *People* v. *Tieman*, 8 Abb. Pr., 359; *People* v. *Cook*, 8 N. Y., 82.) The act of 1873, by merging the duties of the board of assistant aldermen into the board of aldermen, altered the powers of the corporation, and was unconstitutional. (*Chastellux* v. *Fairchild*, 15 Pa. St., 18; *Corning* v. *Green*, 23 Barb., 53; *Aiken* v. *The Western R. R. Co.*, 20 N. Y., 373; Valentine's Laws, 199, 225; 8 State Trials, 1281; *Hunt* v. *Mayor, etc.*, 3 Paige, 216; 9 Wend., 591; *Auburn Academy* v. *Strong*, Hopkins, 278; *Rex* v. *Doncaster*, 2 Lord Raymond's R., 1564; *Foot* v. *Prowse*, 1 Strange, 625; *Harrington* v. *Trustees of Rochester*, 10 Wend., 552; 2 Hill, 42; 8 Wheaton, 284, 285; *Purdy* v. *People*, 4 Hill, 384; Dillon on Municipal Corp., § 109; *Bacon* v. *Robertson*, 18 How. [U. S.], 480; *Rex* v. *Passmore*, 2 Tenn. R., 241; *Warner* v. *The People*, 22 Den., 272.) The Legislature was not vested with power to abolish the office of assistant alderman. (Const., art. 1, § 18; *People ex rel. Wood* v. *Met. Police Comrs.*, 15 N. Y., 532; *People ex rel. Bolton* v. *Albertson*, 55 id., 56, 57; *Warner* v. *People*, 2 Den., 272; 1 Cow.,

550; Debates on Constitution of N. Y., 1846, pp. 117, 139, 162, 963–965; Hoffman's Treatise [2d ed.], pp. 27, 32, 44, 73; Valentine's Law, 199, 225; 8 State Trials, 1281; Dillon's Muns. Corp'n, vol. 1, p. 151; *The People* v. *The Rector of Trinity Church et al.*, 22 N. Y., 44; *U. S.* v. *Arrendondo*, 6 Peters, 542, 691; *Dartmouth College* v. *Woodward*, 4 Wheat., 700; *State of N. J.* v. *Wilson*, 7 Cranch, 164; 9 id., 292; *Bailey* v. *Mayor, etc.*, 4 Hill, 539; *Benson* v. *Mayor, etc.*, 10 Barb., 223; *People* v. *Morris*, 13 Wend., 325; *Milhan* v. *Sharpe*, 27 N. Y., 619; *Philadelphia* v. *Field*, 58 Pa. St., 320; *Overseers, etc.*, v. *Sears*, 39 Mass., 133; *U. S.* v. *R. R. Co.*, 17 Wallace, 322.) The office of assistant alderman being a franchise, and vested in the people of the city of New York, could not be abolished by the Legislature, even if there were no constitutional restrictions. (55 N. Y., 54; 50 id., 553; 17 id., 235; 14 Mass., 340; 23 Wend., 166; *Fletcher* v. *Peck*, 6 Cranch, 135; Cooley's Conn. Lim., 238; *Taylor* v. *Porter et al.*, 4 Hill, 146, per Bronson, J.; *People* v. *Morris*, 13 Wend., 328, and cases cited ; *West. Savings Bank* v. *Phila.*, 31 Pa. St., 175, 185; *Ex parte Heath*, 3 Hill, 42; 1 id., 545; *Rilley* v. *The City of Rochester*, 5 N. Y., 64–72; *Dyckman* v. *The Mayor, etc.*, 6 id., 439 ; *Darlington* v. *The Mayor, etc.*, 31 id., 164, 181, 198–207 ; *Wagner* v. *Troy R. R. Co.*, 25 id., 526; Hoff. Treat. [2d ed.], pp. 62–67, and cases cited ; Dillon's M. Corp., §§ 23–29; Laws 1849, p. 278; *Bank of Chenango* v. *Brown*, 26 N. Y., 474; *Clark* v. *City of Rochester*, 28 id., 605; S. C., 24 Barb., 446; *Bank of Rome* v. *The Mayor*, 24 id., 248; *Corp. of Aberdeen* v. *Saunderson*, 8 Sm. & Marsh. [Miss.], 653; *Co. of Richland* v. *Co. of Lawerance*, 12 Ill., 8; *State* v. *Curran*, 7 Eng., 321; 10 Wend., 267; 4 Seld., 43; 6 Hill, 501; 23 Barb., 349; *Gorham* v. *Springfield*, 21 Maine, 58; *State* v. *Canterbury*, 8 Fost., 218; *Bristol* v. *Newchester*, 3 N. H., 532.)

*D. J. Dean*, for respondent. The act of 1873 abolishing the office of assistant alderman does not contravene any pro-

vision of the constitution. (Valentine's Laws, 199, 201, 250; Dongan Charter, § 7; *Bank of Chenango* v. *Brown*, 26 N. Y., 457; *People* v. *Pinckney*, 32 id., 377; *People* v. *Morris*, 13 Wend., 325; *Butler* v. *Pennsylvania*, 10 How. [U. S.], 402, 416; *State Bk.* v. *Knoop*, 16 id., 369, 380; *People ex rel. Wood* v. *Draper*, 15 N. Y., 532; 2 Kent's Com., 305.) The validity of the provisions of the act of 1873 concerning the election of aldermen cannot be questioned in this action. (*Mott* v. *Connolly*, 50 Barb., 518.) The complaint was insufficient to show title in plaintiff to the salary for which this suit was brought. (1 R. S. [Bank's 6th ed.], § 10, art. 1, tit. 4, chap. 6, part 1; *Connor* v. *Mayor, etc.*, 1 Seld., 285; *Smith* v. *Mayor, etc.*, 37 N. Y., 518.)

EARL, J. This action was brought by the plaintiff to recover a salary, as assistant alderman of the city of New York, for the year 1875. He claims that he was elected to the office in the fall of 1874 ; and while he does not claim that he rendered any service or performed any duties as such assistant alderman, he alleges that he offered to perform the duties of the office, and was at all times during the year ready to do so.

The only question I propose to consider is whether, during the year 1875, there was in the city of New York such an office as assistant alderman.

It was provided in the Dongan charter, granted in 1686, that there should forever thereafter be within the city of New York a mayor, recorder, six aldermen and six assistants, and that they should together constitute the common council of the city. That charter was confirmed by the Montgomerie charter, granted in 1730 ; and in the latter charter the aldermen and assistant aldermen were increased to seven. Under each charter one alderman and and one assistant was to be annually chosen from each ward of the city. These officers continued to constitute the common council down to 1830, and they acted and voted as one body.

In the latter year (chap. 122 of the laws of that year)

aldermen and assistant aldermen were made separate boards, each having a president of its own, and the two boards constituted the common council. The mayor and recorder were no longer to be members of either board or of the common council. The aldermen and assistant aldermen were to be elected annually, one from each ward.

By chapter 187 of the Laws of 1849 it was provided that the board of aldermen should consist of one alderman elected from each ward for two years, and that the board of assistant aldermen should consist of one elected from each ward for one year. By chapter 217 of the Laws of 1853 it was provided that the common council should consist of a board of aldermen and a board of councilmen, the aldermen to be elected one from each ward for two years and the councilmen to be elected from districts for one year. By chapter 446 of the Laws of 1857, it was provided that the board of aldermen should consist of one alderman from each aldermanic district, to be elected for two years, and that the board of councilmen should consist of six members to be chosen from each senatorial district for one year.

By chapter 137 of the Laws of 1870 the board of assistant aldermen was again restored. The aldermen were directed to be elected from the city at large and the assistants from the assembly districts, and they were to be elected annually. The aldermen and assistants were together to constitute the common council, but were to act in separate boards.

It is under this last act that the plaintiff claims to have been elected, notwithstanding the act chapter 335 of the Laws of 1873, section two of which provides as follows: "The board of assistant aldermen is hereby abolished, from and after January 1, 1875; and from and after that date, the board of aldermen is hereby declared to be the common council and shall solely possess the powers and perform all the duties by law conferred or imposed upon the board of aldermen and board of assistant aldermen, the common council, or any one or more of them." The claim of the plaintiff is that the Legislature had no power to abolish the board

of assistant aldermen, and hence that its action, in that respect, was invalid and that his election under the law of 1870 was legal and valid.

The corporation of the city of New York is a public corporation, and hence its charter is always subject to amendment or alteration by the legislative power, except as restrained by some constitutional inhibition. The Dongan and Montgomerie charters have no peculiar sanctity because the were granted under the sovereigns of England. They were public charters granted for public purposes, and are as much subject to legislative control as charters of the same kind granted by the Legislature of the State. It was said by Webster, in his great argument in the *Dartmouth College Case* (4 Wheat., 562), that "some corporations are for government and political arrangement; such, for example, as cities, counties, and the towns of New England. These may be changed and modified as public convenience may require, due regard being always had to the rights of property." In the same case Mr. Justice WASHINGTON said in substance, that there were two kinds of corporations aggregate, viz., such as were for public government, and others of a private character. The first are those for the government of towns and cities, or the like, and being for public advantage, are to be governed according to the laws of the land; that these were mere creatures of a public institution created exclusively for public advantage; that it would seem reasonable that such a corporation may be controlled, and its constitution altered and amended by the government in such manner as the public interest may require; that such legislative interference cannot be said to impair the charter by which the corporation was formed, because there is in reality but one party to it, the trustees or governors of the corporation being merely the trustees for the public, the *cestui que trust* of the corporation. (*The People* v. *Pinckney*, 32 N. Y., 377, 395.) Judge COOLEY in his work on Constitutional Limitations, p. 192, condenses the authorities upon this ques-

tion as follows: "The creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the Legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether in the legislative discretion. The rights and franchises of such a corporation, being granted for the purposes of the government, can never become such vested rights as against the State that they cannot be taken away ; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. Restraints upon the legislative power of control must be found in the Constitution of the State, or they must rest alone in the legislative discretion."

The doctrine of these authorities has never before, so far as I have discovered, been questioned in the courts of this country. The Legislature of this State has made frequent amendments of the charter of New York. The mayor and recorder no longer constitute a portion of the common council. They are now elected instead of being appointed, as provided in the old charter. The Legislature has from time to time changed the mode of electing the members of the common council, and extended the right of suffrage in the election of such officers. It has abolished some of the old offices and created new ones. It has from time to time increased and diminished the powers of the local officers, and has exercised its power to change and alter the charter of the city at its discretion, and its power to do so, except as restrained by the State Constitution has never been questioned in the courts.

It is provided in section 18 of article 1 of the Constitution that nothing contained in the Constitution shall annul any charter to bodies politic and corporate, made or granted by

or under the king of Great Britain, prior to October 14, 1775. This provision is not a restraint upon legislative power, but simply a declaration that the Constitution itself shall not annul such charters. But the act now in question does not annul any charter; it simply amends or alters the charter. The sole object of that constitutional provision was to leave the charters referred to intact so far as the operation of the Constitution itself was concerned.

But the doctrines above asserted need not in this case be applied to their full extent. Here there was no interference with the legislative power conferred upon the city government. By the act in question it was deprived of no essential right. The legislative power of the city was still vested in the common council, but instead of being exercised by two bodies acting separately, it was to be exercised by one body. This legislation was no violation even of the old charters. By them the legislative power was exercised by one body, called the common council, all the members of which had equal rights as members of the common council, although they were known by different names. Under this law the members of the common council are all to be called aldermen, and it is difficult to perceive how the essential rights of the city under its old charters are interfered with in any way, because some of them are not styled assistant aldermen.

Hence it seems to me there can be no ground for claiming that the Legislature did not have the power to abolish the board of assistant aldermen and vest the whole legislative power in one board of aldermen. It not only abolished the board of assistant aldermen, but abolished the office of assistant alderman. Such must have been the legislative intention, as no place or duty was left for an assistant alderman, the whole legislative power being vested in the aldermen.

But the further claim is made that the act of 1873, so far as it abolished the board of assistant aldermen, could not take effect, because there was no valid provision made in the act for the election of aldermen. That act provides that there shall be twenty-one aldermen; that three shall be elected from each

senate district, no voter being allowed to vote for more than two ; and that six shall be elected from the city at large, no voter being allowed to vote for more than four of them. The claim is that under the Constitution each voter has the right to vote for all the candidates to be chosen, and that the system of allowing a portion of the aldermen to be elected by a minority of the electors cannot be sanctioned.

It is not necessary for us at this time to decide the question thus presented. That portion of the act of 1873, abolishing the board of assistant aldermen and vesting the whole power of the common council in the aldermen can have effect, although the subsequent section as to the mode of electing the aldermen is invalid. If that portion of the act should be held to be invalid, then one of two results would follow; either every elector would have the right to vote for all the aldermen to be voted for where he voted, and they would thus have to be chosen by a majority of the electors voting, or the prior law as to the mode of electing aldermen would be in force. But in any event, there would be no assistant aldermen to be elected.

The judgment for defendant upon its demurrer was therefore proper and should be affirmed with costs.

All concur.

Judgment affirmed.