THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM S.
    DEVERY, Appellant, v. BIRD S. COLER, as Comptroller of
    the City of New York, Respondent.

1. CONSTITUTIONAL LAW — REORGANIZATION OF THE POLICE DEPART-
MENT IN THE CITY OF NEW YORK — L. 1901, CH. 33, NOT VIOLATIVE OF
§ 16, ART. 3, OF STATE CONSTITUTION RELATING TO LOCAL BILLS.
Chapter 33 of the Laws of 1901, abolishing the board of police commis-
sioners and the office of chief of police of the city of New York, and
imposing the duties of those offices upon a single commissioner, is not in
conflict with section 16 of article 3 of the Constitution, as embracing more
than one subject which is not expressed in its title, since the act embraces
but one subject, viz., the reorganization of the police force of the city,
and that is not only sufficiently but is elaborately expressed in the title.

2. NOT VIOLATIVE OF THE FEDERAL CONSTITUTION AS IMPAIRING
THE OBLIGATION OF CONTRACTS. The act is not violative of the Federal

Constitution as impairing the obligation of a contract, in that it deprives the incumbent of the office of chief of police of his right to the pension to which he would have been entitled had he been permitted to serve as such officer for the requisite time, and which would have been paid out of a fund, a part of which was derived from deductions from his salary. (L. 1897, ch. 378, §§ 351–357.) 1. Because assuming, but not deciding, that the statutory provision for pensions constituted a contract with him, the legislature has the right to abolish the office, and as the act does not purport to abrogate his right to a pension, if he has any vested rights beyond the power of legislative interference, he may assert them in a proper proceeding. 2. Assuming, but not deciding, that the pension scheme was such that the legislature could not abolish the office without violating such contract, then the original legislation establishing the scheme was void, so far as it led to any such result, since one legislature cannot bind the hands or limit the powers of subsequent legislatures in matters that are strictly governmental, and what it cannot do directly it cannot do indirectly by authorizing the municipality to enter into any contract with an incumbent of the office which would have that effect.

*People ex rel. Devery* v. *Coler,* 71 App. Div. 584, affirmed.

(Argued November 12, 1902; decided January 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 20, 1902, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the defendant to pay to the relator the salary of chief of police of New York city for the month of February, 1901.

The facts, so far as material, are stated in the opinion.

*Judson S. Landon, Abram I. Elkus* and *Carlisle J. Glea-son* for appellant. Chapter 33 of the Laws of 1901 is in direct conflict with section 1, article 1, and section 1, article 13, of the Constitution of the state of New York. (*Barker* v. *People,* 3 Cow. 686; *Rogers* v. *Common Council,* 123 N. Y. 173; *Mayor, etc.,* v. *State,* 15 Md. 379; *People* v. *Hurlbut,* 24 Mich. 44; *Atty.-Gen.* v. *Bd. of Councilmen,* 58 Mich, 213; 1 Story on Const. § 628; *Taylor* v. *Porter,* 4 Hill, 140; *White* v. *White,* 5 Barb. 474; *People* v. *Toynbee,* 20 Barb. 198; *Rathbone* v. *Wirth,* 150 N. Y. 459.) The act is in direct conflict with section 2 of article 10 of the Constitution. (*Rath-*

*bone* v. *Wirth*, 150 N. Y. 459 ; *People ex rel.* v. *Howland*, 155 N. Y. 270 ; *People* v. *Draper*, 15 N. Y. 532, 544; *People ex rel.* v. *McKinney*, 52 N. Y. 374 ; *People ex rel.* v. *Albertson*, 55 N. Y. 50 ; *People ex rel.* v. *Mosher*, 163 N. Y. 32.) The act is in direct conflict with section 6 of article 1 of the Constitution. (L. 1897, ch. 378, §§ 351–357 ; *Dale* v. *Governor*, 3 Stew. 387 ; *Comrs.* v. *Hudson*, 20 Kan. 71 ; 45 N. H. 593 ; *Chalk* v. *Darden*, 47 Tex. 438 ; *U. S.* v. *Teller*, 107 U. S. 64 ; *Frisbee* v. *U. S.*, 157 U. S. 160 ; *Freligh* v. *Matsell*, 94 N. Y. 179 ; *Pennie* v. *Reis*, 80 Cal. 226 ; *People ex rel.* v. *Angle*, 109 N. Y. 564 ; *Allen* v. *Stevens*, 161 N. Y. 122 ; *People ex rel.* v. *Bd. of Suprs.*, 4 Barb. 64.) The act in question is in direct conflict with section 16 of article 3 of the State Constitution. (*People* v. *O'Brien*, 48 N. Y. 193.) To save any part of the act, it must clearly appear that in no degree was the bad part an inducement to the passage of the other part, and that its elimination in no way changes the intended effect of what remains. ( *Warren* v. *Mayer*, 2 Grey, 84 ; *Allen* v. *Louisiana*, 103 U. S. 80 ; *Jones* v. *Jones*, 104 N. Y. 234 ; *People ex rel.* v. *Spicer*, 99 N. Y. 225.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent. Chapter 33 of the Laws of 1901 does not violate the provisions of either section 2 or section 3 of article 10 of the State Constitution. (*People ex rel.* v. *Albertson*, 55 N. Y. 50 ; *People ex rel.* v. *Sturgis*, 27 App. Div. 387 ; 156 N. Y. 580 ; *People ex rel.* v. *Mosher*, 163 N. Y. 32; *Matter of Brenner*, 67 App. Div. 375 ; 170 N. Y. 185 ; *Matter of Jarvis* v. *Waterbury*, 84 Hun, 462 ; *Bergen* v. *Powell*, 94 N. Y. 591.) That part of the statute which confers upon the governor the power to remove the police commissioner may be eliminated from the act without in any way impairing its general scheme or effect. (*People ex rel.* v. *Briggs*, 50 N. Y. 553 ; *Matter of Van Antwerp*, 56 N. Y. 261 ; *Demarest* v. *New York*, 74 N. Y. 161 ; *Matter of M. G. L. Co.*, 85 N. Y. 526 ; *Duryee* v. *New York*, 96 N. Y. 477 ; *Bohmer* v. *Haffen*, 161 N. Y. 390 ;

*Matter of Fuller*, 62 App. Div. 428.) The act in question does not violate any of the provisions of the Federal Constitution. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Ex parte Hennen*, 38 U. S. 230; *Butler* v. *Pennsylvania*, 10 How. [U. S.] 402; *Newton* v. *Comrs.*, 100 U. S. 548; *Coulter* v. *Murray*, 4 Daly, 506; *People ex rel.* v. *Stevens*, 51 How. Pr. 103; *Connor* v. *Mayor, etc.*, 5 N. Y. 285; *People ex rel.* v. *Batchelor*, 22 N. Y. 128; *People* v. *Devlin*, 33 N. Y. 269; *People ex rel.* v. *Roper*, 35 N. Y. 639.) A pension fund for the benefit of the members of the police force is a public fund, subject to legislative control, and a member of the force has no vested interest in it which cannot be taken away by the legislature before the right to the pension accrues. (*Pennie* v. *Reis*, 80 Cal. 226; 132 U. S. 464; *Clark* v. *Reis*, 87 Cal. 543; *Clark* v. *P. & H. Ins. Board*, 123 Cal. 24; 127 Cal. 550.)

CULLEN, J. The relator was the chief of police of the city of New York as that force was organized and constituted prior to the enactment of a statute passed on February 22nd, 1901, known as chapter 33 of the laws of that year. By the first section of that act the official terms of the police commissioners then in office were abrogated, and all their powers and duties imposed on a single commissioner to be appointed within ten days after the passage of the law. By section 3 the office of chief of police of the city of New York was abolished, and his powers and duties granted to and imposed upon the police commissioner. By section 4 the commissioner was empowered to appoint a first and second deputy. Under this statute the mayor appointed a new police commissioner. The commissioner appointed the relator first deputy. The relator acted as deputy, but did not draw his salary as such. He insisted that the statute changing the organization of the police force and abolishing his office was unconstitutional and void. On this theory he contended that he was still in office as chief of police and demanded of the respondent, the comptroller of the city of New York, his

monthly salary. This demand having been refused he sought
to compel payment by a writ of mandamus. The application
for the writ was denied at Special Term, and its action was
affirmed by the Appellate Division.

The learned counsel on both sides have waived all matters
of practice and have presented to this court, as the sole ques-
tion for its determination, the validity of the statute of 1901.
The constitutionality of the act is challenged on several distinct
grounds. The objection is made that it is in conflict with sec-
tion 16, article 3 of the State Constitution, which provides:
"No private or local bills, which may be passed by the legisla-
ture, shall embrace more than one subject, and that shall be
expressed in the title." The law though public is doubtless
local and, therefore, its enactment by the legislature fell within
the restrictive provisions of the Constitution. We think it
very clear that full compliance was had with the constitutional
requirements. The act contains but one subject, the reorgani-
zation of the police force in the city of New York. There
are various details dealt with by the statute, but they are
details of the same subject. In the case of a statute provid-
ing for the original creation of a police force it would not be
denied that the same act could provide for the personnel of
the force, the mode of appointment and removal of the
various members, the powers and functions of its officers and
the control and management of the funds of the department.
These would be not only proper but necessary details of the
subject. In fact, the statute under which the relator held his
office as chief of police not only dealt with all these matters,
but with an innumerable variety of other things, for it was
the Greater New York charter. Nevertheless the law con-
tained but a single subject, the government of the city of
New York. It is plain, therefore, that the statute before us
contains but one subject, and the only question that can arise
is whether the title is broad enough to include all the matters
dealt with by the act. On this constitutional provision the
the general rule is: "It is sufficient if the title expresses sub-
stantially the subject. It is not necessary that the most perfect

expression should be adopted. The object of the requirement of the Constitution is that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted, and to prevent deception." (*Matter of New York and Brooklyn Bridge,* 72 N. Y. 527.) Judged by this standard, the title of the law is not only sufficient but possibly unnecessarily elaborate. It seems to have been drawn with the constitutional provision constantly in the mind of the draughtsman and with the intention that at whatever cost of prolixity the constitutional mandate should be complied with.

The next attack on the validity of the statute is that it violates the Federal Constitution in that it impairs the obligation of a contract. At the time of its enactment the relator had been a member of the police force of the city of New York for twenty-three years. During all of this period there had existed a system of pensions for the police of the city of New York in the benefits of which the members of the force were, in certain contingencies or after certain length of service, entitled to share. This system was created by statute, and to its funds was contributed a deduction of two per cent from the salaries of the members of the police, though the fund was also largely derived from other sources. The latest provisions on the subject are contained in sections 351 to 357 of the Greater New York charter (Chap. 378, Laws of 1897). Under these the relator, if he remained chief of police, would, at the expiration of a term of twenty-five years' service, be entitled to be retired on an annual pension of three thousand dollars, and the charter provides: "Pensions granted under this section shall be for the natural life of the pensioner and shall not be revoked, repealed or diminished." The claim of the relator is that the statutory provisions for pensions out of a fund proceeding in part from deductions from his salary constituted a contract with him, the obligation of which is violated by the abolition of the office which he held, since by ceasing to be a member of the police force he loses his right or opportunity to obtain a pension. I shall not discuss the

question whether the pension laws constituted in any respect
a contract between the state or the city and the members of
the police force.    It is to be borne in mind that this proceed-
ing is not brought to enforce any right or interest of the
relator to or in the pension fund, but for his salary as chief
of police.    Assuming for the discussion only that his right
to a pension is contractual, the argument in his behalf is,
substantially, that because the legislature could not deprive
him of his right to a pension, and because it was necessary, in
order to obtain a pension, that he should remain in office till
he reached the time for retirement, therefore the legislature
could not abolish his office and he is entitled to be continued
in office and to receive the salary thereof until his retirement.
I think the conclusion does not follow from the premise.
The statute does not purport to abrogate any right of the
relator to a pension.    If he has vested rights beyond the
power of legislative interference he may assert them in an
action to recover his pension or for damages.    Even in the
case of private persons a master may discharge his servant,
though in violation of his contract to employ the latter
for a definite term.    The servant cannot insist that he shall
continue in the master's employ, but the master remains lia-
ble to the servant for damages for his breach of contract.
Practically the relator is here insisting on the specific perform-
ance of what he claims was his contract with the city of New
York entered into under legislative sanction.    But there is no
right to the specific performance of such a contract and a law
which prohibits or renders impossible the specific perform-
ance does not impair the obligation of the contract.    This is
clearly pointed out by the late Justice MILLER of the Supreme
Court of the United States in his lectures on the Federal
Constitution (p. 541): "It is needless here to advert to the
difference between specific performance and damages for non-
performance.    In a very limited class of cases only are con-
tracts capable of being specifically performed by the court, such
as the conveyance of real estate, and some others, where the
judicial power can take hold of a man and compel him to do

what he has promised. In much the larger number of cases at law the remedy is by way of damages in a money judgment for not performing the thing promised. *A state statute or law that impairs the obligation of a contract must be one which takes away the remedy for its violation.*" There is no claim made that the relator's right to the statutory compensation while in office prior to retirement is contractual and beyond the power of the legislature to alter or take away. The authorities are conclusive to the contrary of such a doctrine. (*Conner* v. *Mayor etc. of N. Y.*, 5 N. Y. 285; *Butler* v. *Penn.*, 10 How. [U. S.] 402; Mechem Public Officers, sec. 857.) The relator's position is not that the salary could not be taken away from him, but that he could not be deprived of the office, and his claim to the salary is the mere incident of his claim to the office.

There is a further answer to the relator's claim. If we assume that the relator's right to a pension is contractual and also assume that the pension scheme was such that it was not possible for the legislature to subsequently abolish the relator's office without violating that contract, does it follow that the statute now before us is void as contravening the Federal Constitution? Not at all. All this would simply prove that the original legislation establishing the pension scheme was void so far as it led to any such result. Nothing is better settled in our jurisprudence than that one legislature cannot bind the hands or limit the power of subsequent legislatures. (Cooley Const. Lim. p. 125.) The exception to this doctrine is where the legislative act is the grant of some property right which may not thereafter be recalled, but in matters that are strictly governmental the rule is absolute. It is plain that the regulation of the administration of a city, the determination of the number, character, power and authority of its officers and the duration of their terms is governmental in the highest degree. " A municipal corporation is a part of the governmental machinery of the state, organized not for the purpose of private gain, like private corporations, but for the purpose of exercising certain

functions of government within a specified locality; and it possesses such powers, and such only as are conferred upon it by the legislature; and they are to be exercised in such form, mode and manner, and by such agencies as the legislature shall from time to time prescribe, within the limits of the Constitution. ✻ ✻ ✻ over all its civil, political or governmental powers the legislature is, in the nature of things, supreme and without limitation, unless restrained by the Constitution." (*People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553.) No one would assert that one legislature by a provision to that effect in a statute creating an office could deprive its successors of the power to abolish the office or change its term. If a legislature has no such power to directly limit subsequent legislation it cannot do so indirectly by authorizing the municipality to enter into any contract with an incumbent of the office. The decisions of the Supreme Court of the United States are conclusive on this question. In *Stone* v. *Mississippi* (101 U. S. 814) the legislature in consideration of the immediate payment of a specified sum and the annual payment of a further sum and a percentage of receipts from the sale of tickets chartered a company and authorized it to maintain a lottery. Subsequently the Constitution of the state provided that no lotteries should be authorized or permitted to be drawn within the limits of the state. It was contended for the company that the constitutional provision could not impair its chartered rights. The general doctrine was conceded by the court, but it was held through Chief Justice Waite that the doctrine did not apply to the exercise of governmental functions. It was there said, approving an opinion of this court: "All agree that the legislature cannot bargain away the police power of a state. 'Irrevocable grants of property and franchises may be made if they do not impair the supreme authority to make laws for the right government of the State, but no legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police.' (*Met. Board of Excise* v. *Barrie*, 34 N. Y. 657.) ✻ ✻ ✻ The question is, therefore, directly

presented whether, in view of these facts, the legislature of a State can, by the charter of a lottery company, defeat the will of the people, authoritatively expressed, in relation to the further continuance of such business in their midst. We think it cannot. No legislature can bargain away the public health or the public morals. The people themselves cannot do it, much less their servants. *   *   *   But the power of governing is a trust committed by the people to the government, no part of which can be granted away."

We are now brought to the consideration of the most serious questions involved in this case. Section 2 of the statute provides that the commissioner shall, unless removed, hold office for the term of five years. It is further provided that " The said commissioner may, whenever in the judgment of the mayor of said city or the governor the public interests shall so require, be removed from office by either, and shall be ineligible for reappointment thereto." Similar provision is made for the removal of his successor or successors. It is contended by the learned counsel for the relator that these provisions are in conflict with the Constitution of the state in several respects. It is urged, *first*, that they violate section 2 of article 10, which provides : " All city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose ; " and, *second*, that they violate the provisions of section 1, article 1 of the Constitution, that " No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers ; " and of section 1 of article 13, which provides : " No other oath, declaration or test (than the constitutional oath prescribed by this section) shall be required as a qualification for any office of public trust." Before discussing these objections in detail it may be proper to first dispose of the answer made to this contention in the learned opinion of the majority of the court

below.   It is there said : " It is settled beyond dispute that the legislature has power to abolish an office or to terminate the term of a city officer who holds his office under legislative sanction.   If the legislature had the power to remove from office a police commissioner appointed by the mayor of the city of New York, I cannot see that it is a violation of this provision of the Constitution to authorize the governor to exercise that power.   It certainly is no greater restriction upon the power of appointment for the governor to remove an officer appointed by the mayor of a city than it is for the legislature by a direct enactment to remove such an officer." This argument is based on what I consider a radical misconception of the nature of the action of the legislature when it deprives an incumbent of his office by abolishing the office or terminating his term.   In such cases the officer is popularly said to be " legislated " out of office.   This colloquial term expresses with the precision of the logician the character of the removal ; it is legislation.   While the result of such action is that the incumbent is ousted from his office, this result is accomplished, not by striking directly at the officer, but by striking at the office, for in its power to make laws the legislature is authorized to create or abolish offices and to fix official terms.   It is a settled maxim of constitutional law that the law-making power of the legislature cannot be delegated by that body.   (Cooley Const. Lim. p. 117 ; *Barto* v. *Himrod*, 8 N. Y. 483.)   Therefore, the fact that the legislature may in the method described oust an incumbent from his office does not at all tend to prove that as a result of such power it may authorize some other officer to remove him from office.

But as already quoted from the opinion of Chief Judge Church in *People ex rel. City of Rochester* v. *Briggs :* " Over all its (a municipal corporation's) civil, political or governmental powers the legislature is, in the nature of things, supreme and without limitation, unless restrained by the Constitution." Therefore, if there were no constitutional limitations the legislature might provide for the removal of an officer as it might provide for his appointment.   There is, however, the express

8

constitutional requirement that city officers if appointed must be appointed by such authorities of the city as the legislature may designate.    That the police commissioner is a city officer cannot under the authorities be denied.    In the famous Metropolitan Police case (*People ex rel. Wood* v. *Draper*, 15 N. Y. 532) the power of the legislature to authorize the governor to appoint police commissioners for a district composed of several counties was upheld, but on the sole ground that the commissioners were not officers of the city, but of the district.    Discussing the question of what offices are local, Judge DENIO, writing the prevailing opinion, said : " Hence it follows that if the provisions of the statute had been limited territorially to the city of New York, it would have been in conflict with the section of the Constitution so often referred to."    The same proposition was decided by this court in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50) and in *Rathbone* v. *Wirth* (150 N. Y. 459), and there is no decision to the contrary. There being no express provision of the Constitution prohibiting removal from office, but the commissioner being a local officer and required by the Constitution to be appointed by some of the local authorities, the question finally presented to us for determination is this : Is an unqualified and absolute power of removal vested in one officer inconsistent with the exercise of the power of appointment by another officer ?    I think it is.    It is to be first observed that the question would not arise were the power of removal granted to another local officer, for the legislature is not restricted in the selection of the local authorities on which it may confer the power of appointment.    Therefore, if the power were given to one local authority to appoint and to another local authority to remove, there would be no constitutional objection to such a statute, for the legislature has the power to make the concurrent action of both local authorities necessary for appointment.    In the case before us, however, the power of removal is given to the governor of the state on whom, if the office is a local one, unquestionably the power of appointment cannot be conferred.

Since the adoption of the Constitution of 1846, which first contained this provision as to the election or appointment of local officers, no constitutional question has been so frequently before this and the other courts of the state as the extent and effect of these limitations. The decisions are so numerous that even a cursory review of them would exceed the limits of a judicial opinion. There is substantial agreement in all the authorities on the propositions that the object of the constitu·· tional provision was to secure to the electors in localities the selection and choice of their local officers, either immediately by election or mediately through appointment by other local officers, and that while the power of the legislature is plenary, except when restricted by the Constitution, this latter principle is not to be so extended as to give validity to every legislative act against which there cannot be found in the Constitution an inhibition in express terms. " An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden." (ALLEN, J., *People ex rel. Bolton* v. *Albertson, supra.*) " When the main purpose of a statute, or of part of a statute, is to evade the Constitution by effecting indirectly that which cannot be done directly, the act is to to that extent void, because it violates the spirit of the fundamental law." (VANN, J., *People ex rel. Burby* v. *Howland,* 155 N. Y. 270.) I think no one will deny that the provisions of the Constitution regulating the selection of local officers are exclusive, or the correctness of the doctrine enunciated by BROWN, J., in *People ex rel. Wood* v. *Draper* (*supra*), that when the Constitution " Prescribes a mode of exercising a function of government, such as making laws, administering justice, or selecting officers, the legislature are prohibited from prescribing a different mode." (See Cooley Const. Lim. p. 64, and cases there cited.) It was on this ground that the decision in

*Barto* v. *Himrod* (*supra*) proceeded, the court holding that the Constitution having vested the legislative power in the legislature it excluded the people themselves from enacting a law, though the law was submitted to them for action thereon by a statute passed by the legislature. "It is, of course, evident that the (constitutional) provision authorizes the legislature to confer the power of appointment upon any local authority; but that the power, which is to be thus conferred, may be qualified, or hampered in its exercise, by the legislature, is not only not evident, but such a proposition, in my opinion, threatens what we are bound to regard as a cardinal principle of our form of government." (*Rathbone* v. *Wirth,* 150 N. Y. 459.) Hence, the legislature could not enact that a local officer of the constitutional class should be appointed by a designated local authority and the governor or by the local authority with the consent of the governor. I think it is just this that the legislation now before us has attempted. The power to remove granted to the governor is absolute and unqualified. Under this provision of the statute, if valid, he may not only legally but justly and properly remove the incumbent from office because he deems him not to be the proper man for the place and thinks a better one could be appointed. The intent of the Constitution is that the office shall be filled by an incumbent whom the electors of the locality or their chosen officers deem the proper person to discharge its duties, regardless of the opinion of the other officers or other electors of the state on that subject. It is no answer to this to say the constitutional requirement is complied with because the officer must hold a certificate of appointment from a local authority. The Constitution deals with substance, not merely with form. When it provides that the officer shall be elected by the electors of the locality or appointed by some local authority, its mandate is that the office shall be filled and held solely by virtue of such election or appointment. An absolute power of removal in the governor is inconsistent with such a tenure. The question before us is very different from that which would be presented by a provision that the governor might

remove for misconduct in office after a notice and a hearing. The Constitution, by section 8 of article 10, provides that " The legislature may declare the cases in which any office shall be deemed vacant when no provision is made for that purpose in this Constitution." The legislature has exercised this authority by laws of a general character and enacted that the removal of the residence of a local officer without the locality for which he was elected, the conviction of an officer of a crime involving a violation of his oath of office, or his conviction of a felony of whatever character renders the office vacant. The validity of the statutory provisions has never been challenged. I am not prepared to assert that a statute authorizing the governor to remove a local officer for misconduct on charges and after a hearing could not be justified under the section of the Constitution quoted.

The proposition that the constitutional regulations as to the choice of local officers operate not merely upon the election or appointment to office, but on its tenure, seems to me to have been decided by this court in the cases of *People ex rel. Fowler* v. *Bull* (46 N. Y. 57) and *People ex rel. Williamson* v. *McKinney* (52 N. Y. 374). In the *Bull* case the defendant was elected justice of the eighth judicial district of the city of New York, which office fell within section 18, article 6, of the Constitution of 1846, which provided : " All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the legislature may direct." At the time of his election the term of the office had been fixed by statute at six years. In 1866 a statute was passed extending his term of office for three years. The question presented in the case was the validity of that statute. The defendant had been elected judge of the court and come into his office lawfully, and the legislature had unquestionably the power to prescribe the duration of the office. It was argued in support of the validity of the statute that thus all the constitutional requirements had been complied with. This court took a contrary view. Judge Folger there said : " If the

defendant were asked in the fifth or sixth year of his incumbency how he held his office, he could truthfully answer, by election by the people. If he were asked in the seventh, eighth or ninth year, and should make such answer, would it be truthful? The people could elect but by law for only six years. The six years had gone by. The people had never again elected. The defendant was still using the office. What power sustained him in the use? Could he show any save the statute of 1866?" It was held that as the legislature could not have passed an act appointing the defendant to office, it was equally precluded from extending the term of the office to which he had been legally elected. The *McKinney* case is to the same effect. In the present case if the legislature could not have prescribed that the police commissioner should be appointed by the mayor with the consent of the governor, how was it empowered to enact that he should not hold the office for a single instant after his appointment except by the sufferance and consent of the latter officer?

In my opinion the provision that renders any incumbent who may be removed from the office of police commissioner ineligible for reappointment is also unconstitutional. Doubtless the legislature may prescribe qualifications for office where there is no constitutional provision on the subject. The legislature has exercised this power in many cases and the validity of the exercise has been upheld. (*People* v. *Platt*, 117 N. Y. 159; *People* v. *Purdy*, 154 N. Y. 439.) Early in the judicial history of this state it was declared "To be entirely clear, that the legislature cannot establish arbitrary exclusions from office." (*Barker* v. *People*, 3 Cowen, 686.) The doctrine was recognized in *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173) and the proposition expressly decided in *Rathbone* v. *Wirth* (*supra*). In the last case a statute providing that no person should be eligible to the office of police commissioner in the city of Albany unless he was a member of the political party having the highest or the next highest representation in the common council was held unconstitutional. There was a vigorous dissent in that case and opinions were written by two members

of the minority of the court. In one, Judge BARTLETT conceded the invalidity of the provision referred to, but thought it might be separated from the remainder of the statute. In the other, Judge MARTIN did not deem it necessary to decide the question. He thought that the provision might be sustained on the ground that so many acts had been passed by the legislature of a similar character that it amounted to a practical construction of the Constitution. Independent of that consideration he was inclined to the belief that the provision was invalid. From this statement it appears that the court was substantially unanimous in the proposition that arbitrary disqualifications from office are in violation of the Constitution either as infringements on the personal rights of the individual or as restraints on the choice of the electors or appointing authorities. It is entirely clear that the provision disqualifying from reappointment a police commissioner who may have been removed by the mayor or the governor is of the most arbitrary character. I believe that nothing approximating to it can be found in the history of legislation. As already said, the incumbent may be removed by the governor or by the mayor because either of the latter think that a better man for the place may be found. A removal does not involve any reflection on the official or the personal character of the officer removed. After every municipal election which results in a change of the political control of the municipality the old officials, or at least the heads of the great executive departments, are turned out and new men are appointed to office. This is true to a very large extent when there is no change in the political control of the city, but simply in the personnel of the mayor. Indeed the dominant feature of the present charter of the city of New York is the bestowal upon the mayor of the continuous and unlimited power of selection and removal of his subordinates, so that he may be held accountable to the people for the efficiency of the municipal government. The proposition that the removal of an official under such circumstances can be made to operate *per se* as a disqualification for subsequent appointment to office (for if it

can be made a disqualification for reappointment to this office it can equally be made a disqualification from holding any office which is the creation of statute or the qualifications of which are not fixed by the Constitution) is saved from being monstrous only by being ridiculous. Of course, the legislature can prescribe no such disqualification. If removal could be made only for misconduct upon charges a very different question might arise.

It has been suggested that this disqualification is analogous to that found in the Constitution in relation to the sheriff, where it is provided that that officer is ineligible for re-election to the next term. A little consideration, however, will show that the suggestion is without force. At the time when this constitutional provision was first adopted the office of sheriff was popularly believed to be much more powerful than we now regard it. It was supposed to be so powerful that the sheriff might dominate the electors of his county and secure his re-election against their unbiased will. (See Clark's Proceedings Convention of 1821 at p. 192.) It was against this evil that the Constitution sought to guard. But in the statute before us it will be observed that if the police commissioner serves out his term of five years he is entirely eligible for reappointment to the next term. If it was the fear that the officer would be so powerful as to dictate his own reappointment, then it would have been enacted that he should be ineligible for reappointment under all circumstances. Moreover, it is a little difficult to discover how a commissioner could so exert the power of his office as to secure a reappointment and yet be unable to save himself from removal. If removed by the mayor he certainly could not obtain immediate reappointment from him. If removed by the governor he could be again removed after his reappointment. There can be only one purpose of this provision, and that purpose plain, to prevent the mayor from appointing any person whom the governor might remove.

Though the provisions we have last discussed are unconstitutional, we do not think that the whole statute is, therefore,

rendered void. "It is a universal rule that where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless the provisions are so connected together in subject-matter, meaning or purpose, that it cannot be presumed the legislature would have passed the one without the other." (*People ex rel. City of Rochester* v. *Briggs, supra.* See Cooley Const. Lim. p. 177.) The main feature of the statute is the abolition of the board of four commissioners and the office of chief of police, and the imposition of all the powers and duties of those officers on a single commissioner. In these respects we have held the statute valid. The validity of the power conferred upon the mayor to appoint and remove a commissioner cannot be challenged. Thus, the substantial object sought to be accomplished by the statute can be carried out. The provisions conferring upon the governor the power to remove and making the removed official ineligible to reappointment, are not vital or integral parts of the statute. If we eliminate them it will in no degree impair the efficiency of the statutory scheme for the reorganization of the police department. In *People ex rel. Fowler* v. *Bull* (*supra*) this court held that, although a provision of a statute extending the term of an elective officer was unconstitutional, another provision of the statute postponing the time for the election of the successor to the office was not so connected with the previous provision for the extension of term as to fall within it, though the effect of the decision was to leave the office vacant during the period for which the legislature had sought to extend the term. In *Demarest* v. *Mayor, etc., of N. Y.,* (74 N. Y. 161) the statute abolished the board of assistant aldermen and provided that the common council of the city of New York should thereafter consist of a board of aldermen to be elected in the prescribed manner. The constitutionality of the method provided for the election of the new board of aldermen was attacked. But this court held that it was unnecessary to decide the question, saying that whether the act was constitutional or not so far as it provided for the election of the new board, it was certainly valid so far as it

abolished the old board. Other cases are to the same effect. (*Duryee* v. *Mayor, etc., of N. Y.,* 96 N. Y. 477; Cooley Const. Lim. p. 209. See cases there cited.) Under all the authorities we are required to uphold the valid parts of the statute before us.

The order appealed from should be affirmed, with costs.

BARTLETT, HAIGHT and MARTIN, JJ. We concur in the opinion of CULLEN, J., except as to the parts thereof in which he holds that the provisions of the act giving the governor the power to remove the commissioner whenever in his opinion the public interests shall so require, and that he shall not be eligible for reappointment, are unconstitutional. We do not believe it is necessary or wise to now determine these questions; for, if the provisions of the act should be held invalid as to these questions, it would not impair or render void the remaining provisions of the act.

PARKER, Ch. J., O'BRIEN, J. (and BARTLETT, HAIGHT and MARTIN, JJ., in memorandum), concur; VANN, J., absent.

Order affirmed.