PEOPLE ex rel. PINTLER v. TRANSUE et al., Board of School Directors.

(Supreme Court, Special Term, Wayne County. December 23, 1911.)

1. STATUTES (§ 250*)—ERROR IN PUBLICATION—TIME OF TAKING EFFECT.

Laws 1910. c. 607, amending education law (Consol. Laws 1910, c. 16) art. 14, which articles as amended consist of sections 380–398, both inclusive, provides by section 2 that section 303 of the article should take effect on April 1, 1911. *Held*, that the reference to section 303 was an error, there being no such section in the article, and that section 383 was intended.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 331; Dec. Dig. § 250.*]

2. OFFICERS (§ 19*)—ELIGIBILITY AND QUALIFICATIONS—CONSTITUTIONAL AND STATUTORY PROVISIONS.

That a person is entitled to exercise the right of suffrage does not necessarily carry with it the right to hold office, where the Constitution is silent on the subject, and, where the office is created by statute, the Legislature may specify the qualifications of candidates therefor.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 23; Dec. Dig. § 19.*]

3. CONSTITUTIONAL LAW (§ 274*)—DUE PROCESS OF LAW—FRANCHISES AND PRIVILEGES—OCCUPATION OR PROFESSION.

Laws 1910, c. 607, amending the education law (Consol. Laws 1910, c. 16), which provides by section 384 that, to be eligible to election to the office of district superintendent of schools, a person must be at least 21 years of age, a citizen of the United States, and a resident of the state, and that "he must possess or be entitled to receive a certificate authorizing him to teach in any of the public schools of the state without further examination, and he shall also pass an examination prescribed by the Commissioner of Education on the supervision of courses of study in agriculture and teaching the same," imposes no arbitrary or unreasonable qualification, and does not violate Const. art. 1, § 1, which provides that no citizen shall be disfranchised or deprived of any of the rights or privileges secured to any citizen unless by the law of the land or the judgment of his peers.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 726; Dec. Dig. § 274.*]

4. OFFICERS (§ 19*)—MODE OF FILLING OFFICE—STATUTE—VALIDITY.

Neither does such act violate Const. art. 10, § 2, which provides that all officers whose election or appointment is not provided for therein shall be elected by the people or appointed as the Legislature may direct.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 23; Dec. Dig. § 19.*]

5. CONSTITUTIONAL LAW (§ 206*)—SCHOOLS AND SCHOOL DISTRICTS (§ 46*)—PRIVILEGES AND IMMUNITIES—PROFESSION OR OCCUPATION—DISTRICT SCHOOL SUPERINTENDENT.

Nor does such act violate Const. U. S. Amend. 14, by abridging the privileges and immunities of citizens of the United States.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 625–648; Dec. Dig. § 206;* Schools and School Districts, Cent. Dig. § 92: Dec. Dig. § 46.*]

6. CONSTITUTIONAL LAW (§ 211*)—EQUAL PROTECTION OF LAWS—PROFESSION OR OCCUPATION.

Nor does such act conflict with Const. U. S. Amend. 14, guaranteeing the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 211.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. PROHIBITION (§ 6\*)—GROUNDS—ACTS OF PUBLIC OFFICERS AND BOARDS.

Where public officers or a board of public officers are about to perform an illegal act quasi judicial in its nature, the writ of prohibition is a proper remedy.

[Ed. Note.—For other cases, see Prohibition, Cent. Dig. §§ 31–33; Dec. Dig. § 6.\*]

8. SCHOOLS AND SCHOOL DISTRICTS (§ 46\*)—OFFICERS—CONSTITUTIONAL PROVISIONS—QUALIFICATION OR TEST.

Const. art. 13, § 1, which provides an oath to be taken by certain officers, and declares that no other oath, declaration, or test shall be required as a qualification for any office of public trust, is not violated by Laws 1910, c. 607, amending the education law (Consol. Laws 1910, c. 16), which, by section 384, provides that to be eligible to election to the office of district superintendent of schools a person must be 21 years of age, a citizen of the United States, and a resident of the state, and that "he must possess or be entitled to receive a certificate authorizing him to teach in any of the public schools of the state without further examination, and he shall also pass an examination prescribed by the Commissioner of Education on the supervision of courses of study in agriculture and teaching the same."

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 92; Dec. Dig. § 46.\*]

Petition by the People, on the relation of Freeman Pintler, for a writ of prohibition against Judson L. Transue and others, as the Board of School Directors in Supervisory District No. 4, Wayne County, New York, in which Andrew S. Draper, Commissioner of Education, was permitted to intervene as a party defendant. Writ denied.

Edson W. Hamn, for relator.

Frank B. Gilbert (Clyde W. Knapp, of counsel), for defendants.

CLARK, J. In this proceeding the relator by a writ of prohibition seeks to prevent the school directors in supervisory district No. 4 of the county of Wayne from electing a superintendent of schools for that district, and the Commissioner of Education, Andrew S. Draper, by an order of the court, has been permitted to intervene as a party defendant.

By chapter 607 of the Laws of 1910, the office of district superintendent of schools was created. The office is a creature of the statute and not of the Constitution. By the terms of the act school commissioner districts outside of cities and school districts of 5,000 population, or more, were to be organized and divided into supervisory districts. Two school directors were to be elected in each town in said districts, and the directors in the several towns composing a supervisory district were to meet at the time stated in the act for organization, and to elect a superintendent of schools for their respective districts. The act provided further (section 384) that to be eligible to election to the office of district superintendent of schools a person must be at least 21 years of age, a citizen of the United States, and a resident of the state, and that:

"*He must possess or be entitled to receive a certificate authorizing him to teach in any of the public schools of the state without further examination,*

*and he shall also pass an examination prescribed by the Commissioner of Education on the supervision of courses of study in agriculture and teaching the same."*

The relator was a candidate for the position of superintendent of schools in supervisory district No. 4, in Wayne county, but did not possess the qualifications pointed out in subdivision 2 of section 384 of said act as above quoted, and he brings this proceeding and seeks to prevent the school directors in his district from electing any one to the office of district superintendent of schools, alleging that the act in question is unconstitutional and inoperative, and the relator is specially insistent on the writ being granted because sections 383 and 384 of chapter 607 of the Laws of 1910 are not operative and in force, and will not be until January 1, 1912.

[1] A reading of the statute and the numbers of the various sections therein will show clearly and conclusively that the relator's contention that the sections referred to are not in force is highly technical and is without real merit. The act in question amends article 14, c. 16, of the Consolidated Laws, as amended by chapter 140 of the Laws of 1910, which article as amended consists of sections 380 to 398, both inclusive.

By section 2 of Laws 1910, c. 607 it is provided as follows:

"Sec. 2. Sections 381 and 382 of this article hereby amended shall take effect on the 1st day of July, 1910. Section 303 of such article shall take effect on the 1st day of April, 1911. All other provisions of such article shall take effect on the 1st day of January, 1912."

There is no section 303 in this article, and it is perfectly plain that, when section 303 is referred to in subdivision 2 of section 398, it was an error, and that section 383 was intended. It was a clerical error, and this entire act should not be nullified for an error which is plain on its face, and which does not go to the substance of the controversy.

It was intended that sections 383 and 384 of the act in question should take effect April 1, 1911, and the purpose of this important legislation should not be nullified because of a clerical and perfectly excusable error. A careful reading of the entire act would permit of no other construction, unless the court went out of its way to nullify a statute on a technicality.

The relator complains that the statute in question is unconstitutional as violating section 1 of article 1 of the state Constitution. That section reads as follows:

"No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers."

Relator also contends that the act in question violates section 2 of article 10 of the state Constitution, which provides:

"All other officers, whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law shall be elected by the people, or appointed, as the Legislature may direct."

And relator further contends that the act in question violates the fourteenth amendment of the federal Constiution because it abridges the privileges and immunities of citizens of the United States and denies to a person the equal protection of the laws.

In other words, it is contended by the relator that the act in question is unconstitutional because by subdivision 2 of section 384 thereof it prescribes certain qualifications which must be possessed by a candidate for the office of district superintendent of schools in order to make him eligible for the position, which qualifications are that he must possess or be entitled to receive a certificate authorizing him to teach in any of the public schools of the state without further examination, and that he shall also pass an examination prescribed by the Commissioner of Education on the supervision of courses of study in agriculture and teaching the same.

After the act in question took effect, the Commissioner of Education caused examinations to be held in various parts of the state for the convenience of those who desired to be placed on the eligible list for district superintendents of schools, and the relator took one of these examinations, and attempted to meet the requirements of section 384 of the act in question. If he had possessed the qualifications required by the act and had been placed on the eligible list for the office of district superintendent of schools and had been elected to that position, it is suspected that he would have been less zealous in his efforts to do away with the statute.

It is plain from the return in this proceeding that certificates authorizing the holders to teach in any of the public schools of the state without further examination are issued and recognized by the Department of Education of the state, and have been for many years, and it is unnecessary to name in detail these various certificates. Had the relator possessed one of these certificates and could have passed an examination with reference to courses of study in agriculture and teaching the same, he would have been placed on the eligible list for the position of district superintendent of schools.

The statute in question is remedial in its nature, and was clearly intended to provide a better and more effective supervision and control of the rural schools of this state. It is well known that for many years the office of School Commissioner had been a purely political office, the incumbent in many cases being selected more with reference to his ability to poll votes than with reference to his fitness and qualifications for the position, and it was undoubtedly the purpose of the legislation under consideration to remove the management of the rural schools as far as possible from the activities of party politics, and to provide a way for having the schools managed and controlled by persons specially qualified for those duties.

The duties of district superintendent of schools are important. He is in constant touch with the teachers and pupils in the rural schools. He advises and in a large measure controls the teachers in their professional work, and directs how the schools shall be conducted. It goes without saying that a person ought to have some qualifications

for such a position beyond the mere qualification of being eligible to exercise the elective franchise.

If the contention of relator is correct that, in requiring some qualifications as pointed out in section 384 of the act under consideration in a candidate for the position of district superintendent of schools, the Legislature violated the Constitution of the state, then it would be possible for any person to demand the right to hold that position, even though he could not read and write, provided he was a legal voter in his district.

I cannot believe that the framers of the organic law ever intended the Legislature should be deprived of the right to prescribe certain reasonable qualifications for those in charge of the schools where the children of the commonwealth are to receive the rudiments of an education.

The office of School Commissioner, which was created by chapter 179 of the Laws of 1856, was the creature of the statute, and I can find no authority for asserting that the imposing of educational and other reasonable qualifications for the office of district superintendent of schools would be improper.

[2] The relator contends that he, being a person entitled to exercise the right of suffrage, must necessarily possess the right to hold this office, whether or not he is competent to fill the position. I cannot agree with him in that contention. Where the Constitution is silent on the subject, the right to vote does not necessarily carry with it the right to hold office. The right to hold office is not specifically given to an elector by the Constitution, and, where the office is created by statute, it is within the power of the Legislature to specify the qualifications of candidates for that office. In this case, if the Consitution had provided the qualifications for the office of district superintendent of schools, the Legislature could not alter them; but, in the absence of such constitutionl regulation, the Legislature is competent to prescribe the qualifications which must be possessed by a candidate for an office which it created. 29 Cyc. 1375, 1376; Barker v. People, 3 Cow. 686, 15 Am. Dec. 322; People ex rel. Furman v. Clute, 50 N. Y. 451, 10 Am. Rep. 508.

[3-6] I am not aware of any constitutional prohibition against limiting the number from whom district superintendents can be selected to those possessing educational qualifications, for a statutory appointive office, the duties of which pertain exclusively to matters of education, and, where the Constitution is silent on the subject, the Legislature may fix the qualifications of candidates for an office which it creates. Abbott's Municipal Corporations, § 613; People ex rel. Furman v. Clute, supra; State v. Holman, 58 Minn. 219, 59 N. W. 1006; Jefferies v. Rowe, 63 Ind. 592; State v. Hugele, 135 Iowa, 100, 112 N. W. 234.

A district superintendent of schools conducts teachers' examinations, confers and advises with teachers, gives instructions as to school management and discipline, and in fact his duties require him to have absolute charge of the schools of his district, and exercise such functions as were formerly exercised by School Commissioners. To per-

form these duties successfully and for the best interests of the pupils attending schools, the superintendent must have some professional knowledge of them, and, so long as the qualifications required of a candidate are reasonable and not arbitrary, it is perfectly proper for the Legislature to prescribe what such reasonable qualifications shall be. People v. May, 3 Mich. 598; People ex rel. Devery v. Color, 173 N. Y. 103, 65 N. E. 956; Rogers v. Common Council, 123 N. Y. 173, 25 N. E. 274, 9 L. R. A. 579; Scott v. Saratoga Springs, 131 App. Div. 347, 115 N. Y. Supp. 796.

The purpose of this statute was remedial in its nature and to the end that fit and proper persons and persons reasonably well qualified should be district superintendents of schools. How better could it be arranged to have only fit and competent persons occupying those important positions except that a candidate "must possess or be entitled to receive a certificate authorizing him to teach in any of the public schools of the state without further examination"? Anybody having a life state teacher's certificate, or a college graduate life certificate, or a normal school or college diploma, would be eligible if they also passed an examination prescribed by the Commissioner of Education on the supervision of the courses of study in agriculture and teaching of the same. Holders of these certificates and diplomas would be presumptively better qualified to be district superintendents of schools and have charge of them, than candidates who did not possess and could not obtain such certificates.

The relator has not been arbitrarily excluded from the office of district superintendent of schools. He was simply required to comply with the conditions of the statute before being placed upon the eligible list, and this he either could not or would not do.

In any view of the case, I do not think the statute in question violates the provisions of the state or federal Constitutions, for the relator, not being arbitrarily or unreasonably excluded from the position, could easily get upon the eligible list by complying with the terms of the statute. He is dealt with the same as all other persons of his class, and upon absolutely equal terms, and the rights of life, liberty and the pursuit of happiness and the equal protection of the law guaranteed to him by the Constitution have in no way been transgressed. People ex rel. Kenny v. Folks, 89 App. Div. 171.

[7] I think defendants' contention that the writ of prohibition was not the proper remedy for relator to adopt cannot be sustained. If defendants were about to perform an illegal act quasi judicial in its nature, the writ of prohibition is the speedy and effective remedy; but the difficulty with this case is that relator seeks to prevent defendants, from acting under a statute designed to improve, broaden, and strengthen the educational system of the state on the erroneous theory that he has been deprived of some of his constitutional rights.

[8] The Constitution (article 13, § 1) provides that there should be an oath taken by certain officers and prescribes its form, and then says, "And no other oath, declaration or test shall be required as a qualification for any office of public trust"; and the relator contends that this legislation is in violation of article 13, § 1, of the Constitu-

tion, because it attaches qualifications or tests not mentioned in that instrument. I do not believe that it was ever intended that the taking of the constitutional oath was to be the last word with reference to a man's fitness and qualifications to hold office in this state. Educational qualifications for purely educational offices are not arbitrary, and so long as they are not specifically prohibited by the Constitution and are reasonable they are proper and justifiable. It was not intended that the Constitution should have the narrow construction as placed upon it by the relator, to wit: That, if a candidate for office had the right to vote and was able to take the constitutional oath, it followed that he was a fit and proper person to hold the office sought. The qualifications suggested in the statute under consideration were merely such as would be required to have a candidate equipped for a fit and intelligent discharge of the duties pertaining to the office of district superintendent of schools, and article 13, § 1, of the Constitution was not violated by requiring candidates for that position to possess the qualifications therein enumerated. Rogers v. Common Council, 123 N. Y. 173, 25 N. E. 274, 9 L. R. A. 579.

It must be held that chapter 607, Laws of 1910, being remedial in its nature, imposes no restrictions or qualifications on candidates for the office of district superintendent of schools which are arbitrary or unreasonable, and that it in no way violates the organic law, either of the state or nation.

This application for a writ of prohibition must be denied, with $50 costs. Ordered accordingly.