REALTY REVENUE CORPORATION; Plaintiff, *v.* WILLIAM WILSON, as Commissioner of Housing and Buildings in the City of New York, Defendant.

Supreme Court, Special Term, New York County, September 7, 1943.

*Ignatius M. Wilkinson,* Corporation Counsel (*Charles C. Weinstein, Raymond J. Horowitz, Rose Schneph* and *Bernard Friedlander* of counsel), for defendant.

*Arthur J. W. Hilly* for plaintiff.

*Irving S. Freedman* and *Howard L. Lilienthal* for Associated Hotel and Residence Clubs, Inc., *amicus curiæ.*

*Irving Segal* for Greater New York Taxpayers Association.

WALTER, J. Plaintiff is the owner of a multiple dwelling of a kind which is required by section 248 of the Multiple Dwelling Law to be equipped with a sprinkler system and an interior fire-alarm system. Because such systems have not been supplied, defendant, the Commissioner of Housing and Buildings of the City of New York, has issued an order requiring that the building be vacated. Plaintiff asserts that, because of regulations of Federal agencies respecting the use of materials necessary for the prosecution of the war, it is prevented from obtaining the materials necessary to enable it to install the sprinkler system and fire-alarm system, and upon that ground it brings this action to enjoin enforcement of defendant's order. No one here questions, and the court assumes, the validity of the Federal regulations set up by plaintiff. The case thus presents a conflict between a State law and a Federal law, and the solution of such conflict admits of no doubt. The Constitution of the United States and the laws of the United States made in pursuance thereof are the supreme law of the land, anything in the Constitution or laws of any State to the contrary notwithstanding. (U. S. Const. art. VI.)

That the Multiple Dwelling Law was passed for the public welfare and protection, and is an exercise of the police power of the State which is valid and enforcible in the absence of any exercise of Federal power to the contrary, does not make the Federal power, when exercised, any the less controlling. The instances are numerous in which perfectly valid State

laws yield to a subsequent exertion of Federal power. State insolvency laws yield to the Federal Bankruptcy Act. The field is considerable in which State laws may affect interstate commerce until Congress elects to cover that field, and when Congress elects to cover it the State laws cease to operate. Those instances are familiar and I need not stop to get specific citations.

Neither is it even significant that there are prior decisions sustaining the constitutionality of the Multiple Dwelling Law. Contrary to what perhaps may be a popular impression, the constitutionality of laws depends, not upon abstract theories of philosophy, but upon a very practical application of laws to facts, and a statute which is valid as to one set of facts may be invalid as to another, and one which is valid when enacted may become invalid by change in the conditions to which it is applied. (*Nashville, Chattanooga & St. Louis Ry.* v. *Walters,* 294 U. S. 405, 414, 415; *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89, 95, 96.)

Owners of multiple dwellings may be subjected to uncompensated obedience to many regulations which are costly and burdensome to them, but to enforce against them regulations which the Federal Government says they shall not comply with would be an unreasonable and unconstitutional deprivation of their rights. State commands and Federal prohibitions cannot be allowed to become upper and nether millstones between which the rights of citizens are ground to bits.

Defendant's motion to dismiss the complaint as insufficient is accordingly denied.

I think, too, that the showing here made is sufficient to authorize an injunction preserving the *status quo* pending a trial.

Even Federal-imposed inability to get certain materials cannot justify continued occupation of dwellings, the actual condition of which is such that they in fact constitute an actual and immediate menace to life or health. The Commissioner will not be stayed if walls, floors or ceilings are falling down, or if unsanitary conditions make disease imminent. It thus may be that if inability to get materials continues for a long period there may come a time when owners of such dwellings will have to submit to having them vacated. Upon the papers now presented it does not appear that that point has been reached in this case. It is true that the defendant's order in this case recites, and certain inspectors in his department certify, that plaintiff's building " is unfit for human habitation and is dangerous to life and health by reason of want of repair," but upon the facts thus far shown that appears to mean nothing

more than this: The State has required certain things in the interest of life and health; those things have not been supplied; therefore, life and health are in danger. In other words, defendant is seeking to enforce a statutory standard which is at least an approach to an ideal of living conditions rather than the specifications of a minimum of what a people engaged in a war can get along with; and the meaning of my holding is that, in view of the Federal prohibition, unfitness for human habitation must be judged as a fact in each case and not asserted as the necessary conclusion from mere failure to comply with that statutory standard. The State's statutory standard stands upon the statute books capable of enforcement whenever and wherever the Federal prohibition does not interfere; but while the Federal prohibition continues, and in those cases to which it applies, the State's statutory standard remains in suspended animation.

Settle one order denying defendant's motion to dismiss and granting plaintiff's motion for an injunction pending trial.