Regis O’Brien, J.
This is a proceeding under article 78 of the Civil Practice Act. The petitioner seeks an order in the nature of a writ of mandamus to compel the respondents to comply with the provisions of section 18 of the City Home Rule Law by preparing an abstract of the Local Law No. 1 (1960) adopted by the Common Council of the City of Buffalo on December 22, 1959 and approved by the Mayor of the city on January 4, 1960, amending section 62 of the Charter of the City of Buffalo. It is the petitioner’s contention that such amendment must be submitted to a referendum of the voters of the City of Buffalo at the next general election.
Section 62 adopted as a part of the Charter in 1927 remained unchanged until the present amendment. It read: “ § 62. Ineligibility. Any mayor elected as such under this act for a full term of four years shall be ineligible for the next term after the termination of his office.” As amended, it makes a Mayor eligible to succeed himself upon the expiration of a four-year term. It reads after the amendment: “ § 62. Eligibility. Any mayor heretofore or hereafter elected as such under this act shall be eligible for reelection. ’ ’
The petitioner maintains that the amendment, which by the terms of the Local Law becomes effective upon the approval by the Mayor, cannot become effective unless and until approved by the electors of the city at the next general election. The petitioner relies upon subdivisions 3 and 4 of section 15 of the City Home Rule Law. Section 15 of the City Home Rule Law provides in part that:
‘ ‘ Except as otherwise provided by or under authority of an act of the legislature, a local law shall be subject to mandatory referendum if it: * * * 3. Changes the law of succession to the mayoralty if the office of mayor is an elective office. 4. Abolishes an elective office, or changes the method of nominating, electing or removing an elective officer, or changes the term of an elective office, or reduces the salary of an elective officer during his term of office. ’ ’
*210 The petitioner contends that the right of a Mayor of the city to succeed himself, as provided for in the amended section 62 of the Charter, ‘ ‘ changes the law of succession to the mayoralty ’ ’ under subdivision 3 and ‘ ‘ changes the term of an elective office ’ ’ under subdivision 4 of section 15 above quoted.
The respondents on the other hand maintain that the changes in the “ law of succession ” provided for in subdivision 3 relate only to the filling of the position of Mayor for the remainder of the term if the office should become vacant as contemplated by section 64 of the Charter. The respondents also contend that if subdivision 3 is construed to require a mandatory referendum of the Local Law amending section 62 of the Charter, it will violate provisions of the New York Constitution hereinafter set forth.
The respondents claim that there is no relationship between section 62 of the Charter sought to be amended and subdivision 3 of section 15 of the City Home Rule Law which mandates a referendum when a local law changes the ‘ ‘ law of succession to the mayoralty if the office of mayor is an elective office.” They argue at length in their brief that the term 1 ‘ law of succession ’ ’ is confined to a vacancy occurring during the term of an office and has no reference to eligibility or the removal of a disability to a successive term in the office. None of the authorities to which they refer establish any such universal rule. A mere reading of subdivision 3 indicates that the Legislature in requiring a mandatory referendum when the local law changes the law of succession to the mayoralty, intended that it should cover the removal of the disability or ineligibility of a Mayor to succeed himself in the office. That view is obvious.
Why would the Legislature require a referendum when a Local Law changed the method of filling a vacancy occurring during a term of a Mayor, as contended by the respondents, and not require a referendum when the much greater and more fundamental change is made in permitting a Mayor to succeed himself? This court can find no authority or reason to support such a distinction. The meaning of the word “ succession ” is too clear to require the quotation of definitions of the lexicographers. Clearly, the removal of the disability of an elected Mayor, under.the Local Law amending section 62, to succeed himself in the office, changes the law of succession to the office.
Furthermore, in 1939 the Legislature recognized the importance of the will of the people in changing the law' of succession to the mayoralty. In that year it qualified subdivision 3 of section 15 of the City Home Rule Law by adding to the original, the following ‘ ‘ if the office of mayor is an elective office. ’ ’
*211 The petitioner also claims that a mandatory referendum is required under subdivision 4 of section 15 of the City Home Buie Law on the theory that the Local Law amending section 62 “changes the term of an elective office ”. This contention is not tenable. The eligibility of a Mayor to succeed himself, if elected to another term, clearly would not change or lengthen the term of office. If re-elected, it would • only enable the incumbent to extend his or her time in the office for another term of four years. It would require a very ¡strained construction of the word “ term ” as used.in the phrase “ term of an elective office ” to hold that it meant two or more successive “ terms ” of office.
On the constitutional questions involved, it is relevant to show the reasons for the inclusion of section 62 in the Charter as adopted by the people in 1927. These are set forth in “ An •address by the Charter Commission to the people of Buffalo in submitting the new Charter to be voted on at a special election on August 29th, 1927.” The “Address ” signed by the chairman and the members of the commission states in part: ‘ ‘ Any mayor elected under our proposed charter for a full term is ineligible to succeed himself. The same reasons which we have heretofore given for making councilmen ineligible to succeed themselves apply with equal force to the mayor, and in the case of the mayor an additional reason lies in the fact that outside of the control of the financial affairs of the city, we have made him largely responsible, at least af :er 1930 for the administrative side of the government. It was solely because of the large power given to sheriffs that very early in the history of the state they were made ineligible to succeed themselves.”
The reasons stated by the commission why Councilmen-at-Large elected for four-year terms are not eligible to succeed themselves and District Councilmen elected for two-year terms are ineligible to serve more than two successive terms, which reasons are stated to be also applicable to the office of Mayor are in part as follows: ‘ ‘ The controlling reasons which induced us to the insertion of the ineligibility provision were to restrict to the narrowest compass the evils incident to the formation of ‘ rings ’ or ‘ blocs ’ in the council, to have their official conduct guided by a desire to do right and not controlled and misdirected by a desire to continue in office ’ \
The respondents in this connection argue that the framers of the Charter were concerned that a Mayor might build a political machine and perpetuate himself in office by filling city jobs with individuals who would serve at the Mayor’s pleasure, but that these conditions no longer prevail because, over the course of years since the adoption of the Charter, virtually all *212 city positions and jobs have been placed under the protection of the Civil Service Law and that it is now impossible for a Mayor to intrench himself in office by such feared means.
The respondents, after asserting in their main brief that “ Section 62 of the Charter, as originally enacted, was unconstitutional ”, state: “It is undoubtedly within the power of a legislative body to prescribe certain reasonable qualifications for a candidate for office.” This court, however, is of the view that in deciding the constitutionality of section 62, it is not restricted to the precise theory advanced by the respondents, but that it may consider whether the section in question is constitutional under the changed conditions that now prevail.
It is unnecessary to decide whether section 62 was or was not constitutional when it was adopted in 1927. The law is well settled that an act constitutional when adopted, may become invalid by a change in the condition to which it applies. As' already shown, conditions surrounding the office of the Mayor have substantially changed since 1927.
The principle of law that a statute valid when enacted may become invalid because of changed conditions, has often been pronounced. (Municipal Gas Co. v. Public Serv. Comm., 225 N. Y. 89; Nashville, C. & St. L. Ry. v. Walters, 294 U. S. 405; Perrin v. United States, 232 U. S. 478, 487; Realty Revenue Corp. v. Wilson, 181 Misc. 802, 804; 11 Am. Jur., Constitutional Law, § 102, p. 738; 16 C. J. S., Constitutional Law, § 71, p. 217.) In Nashville, C. & St. L. Ry. v. Walters (supra) the court said (p. 415): “A statute valid as to ¡one ,set of facts may be invalid as to another. A statute valid when enacted may become invalid by change in the conditions to which it applied.” In Municipal Gas Co. v. Public Serv. Comm. (supra), a gas rate case, the court (Cardozo, J.) said (pp. 95-96): “But the argument is that a statute is either valid or invalid at the moment of its making, and from that premise the conclusion is supposed to follow that there is a remedy for present confiscation, but none for confiscation that results from changed conditions. We do not view so narrowly the great immunities of the Constitution or our own power to enforce them.”
An example of the ambulatory nature of the process of the construction of statutes is illustrated by the following: In Doubleday, Doran & Co. v. Macy & Co. (269 N. Y. 272) the court held the Fair Trade Act (L. 1935, ch. 976) unconstitutional and later held the same statute constitutional in Bourjois Sales Corp. v. Dorfman (273 N. Y. 167) after the Supreme Court had held a similar Illinois statute constitutional in Old Dearborn Co. v. Seagram Corp. (299 U. S. 183).
*213 The respondents base their claim that section 62 of the Charter is unconstitutional upon section 1 of article I and section 1 of article XIII of the Constitution and cases construing* these constitutional provisions. Section 1 of article I, insofar as material here, reads: “ No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers ”. Section 1 of article XIII after providing for the form of the oath of office to be taken by State officers, continues, “ and no other oath, declaration or test shall be required as a qualification for any office of public trust ’ ’.
In Matter of Hopper v. Britt (203 N. Y. 144) the court held unconstitutional a provision of the Election Law which provided that if any person was nominated by more than one political party or independent body for the same office, his name should be printed but once upon the ballot. The court, referring to the Constitution said (p. 150): “By section 1 of article 1 it is enacted that no member of this state shall be disfranchised unless by the law of the land or the judgment of his peers. It is, therefore clear that the otherwise plenary power granted to the legislature to prescribe the method of conducting elections cannot be so exercised as to disfranchise constitutionally qualified electors, and any system of election that unnecessarily prevents the elector from voting or from voting for the candidate of his choice violates the Constitution. ’ ’
In Matter of Callahan (200 N. Y. 59) the court held that a provision of the Election Law which forbade the committee of any political party or independent body authorized to make nominations for an office to nominate a candidate of another party for the same office was plainly invalid and unconstitutional. The court said (p. 60): “I shall not discuss the extent of the power of the legislature to regulate elections other than to say that concededly the power must be so exercised as not to deny or impair the rights of the electors. ’ ’ The court further stated (pp. 61-62): “ The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation. (People ex rel. Bradley v. Shaw, 133 N. Y. 493; People ex rel. Goring v. President etc. of Wappinger Falls, 144 id. 616.) Equally, any body of the electors lias the right to choose whom it will for its candidate for office and to appeal to the whole electorate for votes in his behalf * * * It is true that the legislature may prescribe qualifications for office where there is no constitutional provision on the subject, but it has been settled law from the earliest period in the history of our state that it cannot enact arbitrary *214 exclusions from office. (Barker v. People, 3 Cow. 686; Rathbone v. Wirth, 150 N. Y. 459; People ex rel. Devery v. Coler, 173 N. Y. 103.) If it cannot enact arbitrary exclusions from office, equally it connot enact arbitrary exclusions from candidacy for office * * * The liberty of the electors in the exercise of the right vested in them by the Constitution to choose public officers on whatever principle or dictated by whatever motive they see fit, unless those motives contravene morality and are, therefore, criminal, such as bribery, violence,' intimidation or fraud, cannot be denied. ’ ’
In People ex rel. Devery v. Coler (173 N. Y. 103, supra) the court held certain provisions of a statute relating to the Police Commissioner of the City of New York unconstitutional under section 1 of article I and section 1 of article XIII of the Constitution. The statute, so far as material here, provided: 1 ‘ The said commissioner may, whenever in the judgment of the mayor of said city or the governor the public interests shall so require, be removed from office by either, and shall be ineligible for reappointment thereto.” (Emphasis added.) The court stated (p. 118): “In my opinion the provision that renders any incumbent who may be removed from the office of police commissioner ineligible for reappointment is also unconstitutional ’ ’ and continued at pages 119-120: “Prom this statement it appears that the court was substantially unanimous in the proposition that arbitrary disqualifications from office are in violation of the Constitution either as infringements on the personal rights of the individual or as restraints on the choice of the electors or appointing authorities. It is entirely clear that the provision disqualifying from reappointment a police commissioner who may be removed by the mayor or the governor is of the most arbitrary character. I believe that nothing approximating to it can be found in the history of legislation. As already said, the incumbent may be removed by the governor or by the mayor because either of the latter think that a better man for the place may be found. A removal does not involve cmy reflection on the official or the personal character of the officer removed * * * The proposition that the removal of an official under such circumstances can be made to operate per se as a disqualification for subsequent appointment to office (for if it can be made a disqualification for reappointment to this office it can equally be made a disqualification from holding any office which is the creation of statute or the qualifications of which are not fixed by the Constitution) is saved from being monstrous only by being ridiculous. Of course, the legislature can prescribe no such disqualification. *215 If removal could be made only for misconduct upon charges a very different question might arise. It has been suggested that this disqualification is analogous to that found in the Constitution in relation to the sheriff, where it provided that that officer is ineligible for re-election to the next term. A little consideration, however, will show that the suggestion is without force. At the time when this constitutional provision was first adopted the office of sheriff was popularly believed to be much more powerful than we now regard it. It was supposed to be so powerful that the sheriff might dominate the electors of his county and secure his re-election against their unbiased will * * * It was against this evil that the Constitution sought to guard.” (Emphasis supplied.)
(See, to the same general effect as the foregoing decisions, the following: Matter of Davis v. Board of Elections, 5 N Y 2d 66, 68-70; People ex rel. Hotchkiss v. Smith, 206 N. Y. 231, 242; Rathbone v. Wirth, 150 N. Y. 459, 466, 484; Barker v. People, 3 Cow. 686, 703-707; Bareham v. City of Rochester, 128 Misc. 642, 647, mod. 221 App. Div. 36, 40, mod. 246 N. Y. 140.)
Though none of the cases hereinabove cited and discussed involved the precise question presented here, that is, the right to provide by statute that a public officer shall not be eligible to succeed himself in the office after the completion of one term, the principles of law enumerated in these cases are applicable and controlling here.
The constitutional provisions discussed and construed in the foregoing cases preclude the valid enactment of a statute containing arbitrary and unreasonable grounds of disqualification to hold office. They will not, however, invalidate legislation prescribing proper qualifications relating to the ability and fitness of a candidate for the office. In Rogers v. Common Council of Buffalo (123 N. Y. 173, 188) the court said: “ No law involving any test other than fitness and ability to discharge the duties of the office could be legally enacted under cover of a purpose to ascertain or prescribe such fitness.”
The disqualification of ineligibility, contained in section 62, relates to no lack of personal qualifications such as age, ability, experience and integrity of a Mayor, but is predicated upon the assumption that he might through his appointive power build up political “ rings ” and “ blocs ” and perpetuate himself in office. While this assumption was no doubt the basis of the original section 62, it has been shown that these conditions no longer exist. The provision in this section making a Mayor ineligible to succeed himself, under the present con *216 ditions, is as arbitrary as would a provision making him ineligible for another office as is stated in People ex rel. Devery v. Coler (173 N. Y. 103,120, supra).
The petitioner’s application for an order is denied and the proceeding* dismissed.