OPINION OF THE COURT
Gerard H. Rosenberg, J.
In this CPLR article 78 proceeding, petitioners Martin *277 Golden, Jeffrey Livingston and Felipe Luciano (collectively petitioners) seek, inter alia, a judgment invalidating Local Law No. 27 (2002) of the City of New York (Local Law No. 27), and a declaration that any further attempt by respondent New York City Council to enact such law is subject to a mandatory referendum. Respondents New York City Council (City Council or the Council) and the City of New York (collectively respondents) cross-move to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f) for failure to state a cause of action.
The issue raised by the instant proceeding involves the interplay of New York City Charter § 25 (a); §§ 1137 and 1138, and Local Law No. 27. Specifically, the court is asked to determine whether Local Law No. 27, amending City Charter § 25 (a), requires a mandatory referendum[1] for its passage pursuant to Municipal Home Rule Law § 23 and City Charter § 38. The court finds in the affirmative.
Facts and Procedural History
In 1989, the voters, through referendum, adopted a new City Charter. Section 25 (former [a]) of the Charter provided, in pertinent part, that the term of office of an elected council member “shall continue for four years” except for certain elections held in 2001 and 2003, and every 20 years thereafter, respectively, wherein council members “shall serve for a term of two years.”[2]
Subsequently, in 1993, a qualified number of voters submitted an initiative petition pursuant to Municipal Home Rule Law § 37 seeking to amend the City Charter by adding term limit provisions (Charter §§ 1137, 1138) for placement on the general ballot for public referendum. Charter § 1138 provides, *278 in pertinent part, that “no person shall be eligible to be elected to or serve in the office of mayor, public advocate, comptroller, borough president or council member if that person had previously held such office for two or more full consecutive terms (including in the case of council member at least one four-year term).”[3] Charter § 1137 provides that “[i]t is hereby declared to be the public policy of the city of New York to limit to not more than eight consecutive years the time elected officials can serve as mayor, public advocate, comptroller, borough president and council member so that elected representatives are ‘citizen representatives’ who are responsive to the needs of the people and are not career politicians.”
As petitioners contend, the wording of the initiative petition stated that city officers would be limited to “two * * * full consecutive terms” in office, “including in the case of council member at least one four-year term,” thereby recognizing that the two two-year terms in 2001 and 2003 would count toward the two-term limit. Petitioners also note that “[p]rior to the vote on the term limits initiative, all voters had access to the abstract of the term limits proposal, which referred to [the phrase] ‘at least one four-year term’ in the case of Council members.” Furthermore, the text of the proposal was included in the Campaign Finance Board’s 1993 General Election Voter Guide, which was required by law to be mailed to every household with a registered voter. On November 2, 1993, the voters approved the term limit initiative by a 60% margin.
In 1996, the City Council sought to amend Charter § 1138 by extending term limits for a council member’s consecutive service to “three full consecutive terms or twelve consecutive years, whichever is greater,” which was placed on the ballot at the general election for referendum. At the 1996 general election, the proposal was defeated by a 54% margin.
In 2001, the City Council attempted to amend term limits without a referendum, which was opposed by then Council Speaker Peter Vallone, and the legislative proposal was ultimately abandoned.
*279 At this juncture, Charter § 1138, read in conjunction with Charter § 25 (a), had the effect of limiting certain council members to serving six consecutive years in office instead of eight years.[4] For example, a council member elected to serve a four-year term in the 1997 election and reelected to serve the two-year term in the 2001 election was disqualified from running for reelection in 2003 for another two-year term, limiting him or her to serving six consecutive years in office. Similarly, a council member elected to serve the two-year term in the 2003 election and reelected to serve a four-year term in the 2005 election was disqualified from seeking reelection in the 2009 election, limiting his or her time in office to six consecutive years.
In light of the foregoing, the City Council, in July 2002, concluded that this “unequal disqualification” would remove experienced senior members from office; create disproportional representation raising equal protection questions; and destabilize the City Council (Introductory Bill No. 238). The Council therefore “determine [d] that the best means to remedy the above-described problems [was] to amend Section 25 of the Charter [by enacting Local Law No. 27] to provide that a two-year term established thereunder shall not be considered a full term for purposes of Section 1138, but the [sic] two consecutive two-year terms together shall be considered one full term in relation to Charter Section 1138” {id. [emphasis added]). The Council opined that it was authorized to enact the amendment without a referendum because “[t]erm limits [were] qualifications for office and not subject to mandatory referendum under the Charter or state law” {id.). The Council further asserted that it was “without power to submit such local law to referendum” because “[u]nder both the Charter and state law, local laws not subject to mandatory referendum may not be submitted to referendum” {id.).
Therefore, by a vote of 46 to 2 in favor of the amendment, the Council adopted Local Law No. 27 without a mandatory referendum. One month later, the Mayor vetoed the proposed amendment. Thereafter, on September 25, 2002, the Council overrode the Mayor’s veto, and passed the amendment. That part of Local Law No. 27, which amended Charter § 25 (a), provides that:
“Notwithstanding any other provision of this *280 charter or other law, a full term of two years, as established by this subsection, shall not constitute a full term under section 1138 of this charter, except that two consecutive full terms of two years shall constitute one full term under section 1138. A member of the council who resigns or is removed from office prior to the completion of a full term shall be deemed to have held that office for a full term for purposes of section 1138 of the charter.”
As a result of the amendment, council members elected to serve a four-year term in 1997 and reelected to serve the two-year term in 2001 are eligible to run for reelection in 2003 for the two-year term that ends in 2005, but are not qualified to seek reelection for another consecutive term, i.e., the four-year term that follows the election in 2005, making these members eligible to serve eight consecutive years in office, instead of six. In addition, assuming council members eligible to run for reelection in 2003 run and are reelected, one council member elected at the special election held on November 5, 2002 and another council member who was elected to fill petitioner Golden’s seat on February 25, 2003 are now eligible to run for the two-year term in 2003, to run again for the four-year term in 2005, and, if reelected, to run for another four-year term in 2009, making them eligible to serve 11 and 10[3]/4 consecutive years, respectively, since pursuant to Local Law No. 27, a full term of two years (the first term from 2003 to 2005) does not constitute a full term under City Charter § 1138.[5] On the other hand, if incumbents lose their elections in 2003, those newly elected council members will be eligible to serve for 10 years in office. In addition, this sequence will repeat itself every 20 years, potentially permitting affected council members to serve 10 consecutive years in office.
Accordingly, petitioners Martin Golden, former Republican member and Minority Whip of the City Council, elected in 2002 to the New York State Legislature; Jeffrey Livingston, an *281 attorney and former Republican candidate for the United States Congress contemplating running for the office of council member for the Ninth District in Manhattan in 2003; and Felipe Luciano, a journalist, radio personality, and Democratic politician seeking to run for the office of council member for the Eighth District in Manhattan in 2003, commenced the instant proceeding for a judgment, inter alia, invalidating Local Law No. 27 and for a declaration that any further attempt by the City Council to enact the amendment is subject to a mandatory referendum.
By preanswer cross motion, respondents City Council and the City of New York moved to dismiss the petition for failure to state a cause of action pursuant to CPLR 3211 (a) (7) and 7804 (f).
Analysis
Petitioners principally argue that the procedure by which respondents enacted Local Law No. 27 violated City Charter § 38 and Municipal Home Rule Law § 23 because Local Law No. 27 either changed the “term of an elective officer” (City Charter § 38 [4]) or “of an elective office” (Municipal Home Rule Law §23 [2] [e]), or “abolishe[d], transfer [red], or curtail [ed] any power of an elected officer” without a mandatory referendum (City Charter § 38 [5]; Municipal Home Rule Law § 23 [2] [f]). Petitioners also contend that Local Law No. 27 violates Charter § 1137, Municipal Home Rule Law § 11 (2) (a) and (b) and Charter § 40 (1).
Respondents contend that Local Law No. 27 did not require a mandatory referendum for its adoption since it does not change the length of a term of a council member’s office but merely imposes a qualification for office upon elected officials seeking reelection, and thus only changes the limit on the number of consecutive terms that an elected member of the City Council may serve before being disqualified from further consecutive service in that elected office. They also assert that Local Law No. 27 may not be submitted to the electorate due to the absence of any express statutory authority enabling the Council to do so. Finally, respondents urge that petitioners’ remaining claims relating to Charter § 1137, Municipal Home Rule Law § 11 (2) and Charter § 40 are without merit. The court does not agree.
In pertinent part, Charter § 38 (4) and (5) provide that
“[a] local law shall be submitted for the approval of the electors at the next general election * * * and shall become opera *282 tive as prescribed therein only when approved at such election by the affirmative vote of a majority of the qualified electors of the city voting upon the proposition, if it * * *
“4. * * * changes the term of an elective officer, or * * *
“5. [a]bolishes, transfers or curtails any power of an elective officer.”
Municipal Home Rule Law § 23 (2) (e) and (f) set forth almost identical provisions, stating, in pertinent part, that
“a local law shall be subject to mandatory referendum if it:
“e. * * * changes the term of an elective office [or]
“f. [a]bolishes, transfers or curtails any power of an elective officer.”
Petitioners argue that Local Law No. 27 changes the term of an elective office or of an elective officer since the amendment, “on its face,” changes the Charter’s definition of a “full term” from as little as two years to four years or two consecutive full terms of two years, and therefore requires approval of the voters by mandatory referendum. In this connection, petitioners contend that respondents’ belated attempt to mischaracterize Local Law No. 27 as merely changing term limits as opposed to the term of an office is belied by: (1) Local Law No. 27 itself, because it amends City Charter § 25 (a), which defines the length of a council member’s term; (2) the legislative history of Local Law No. 27, which evidences repeated assurances by the City Council that the law would not alter term limits; and (3) the effect of Local Law No. 27 of permitting council members first elected in 2003 to serve 10 consecutive years in office.
Local Law No. 27 provides, in pertinent part, that “[n]otwithstanding any other provision of this charter or other law, a full term of two years, as established by this subsection, shall not constitute a full term under section 1138 of this charter, except that two consecutive full terms of two years shall constitute one full term under section 1138.” As petitioners contend, a plain reading of Local Law No. 27 indicates that a “full term,” which constituted two years prior to its enactment, constitutes two consecutive full terms of two years after its enactment. Stated otherwise, whereas a two-year term prior to Local Law No. 27 constituted a “full term” in all circumstances, after the enactment of Local Law No. 27, a two-year term not coupled with another two-year term no longer counts as a “full term,” but is, in effect, a nullity. Local Law No. 27 therefore redefines the length of a council member’s “full term” from two years to “two consecutive full terms of two years.”
*283 Although respondents assert that Local Law No. 27 merely amends the eligibility standard or term limit qualification under Charter § 1138, as opposed to the definition of a full term under Charter § 25 (a), as petitioner contends, Local Law No. 27 effectively extends the length of a council member’s term by extending the number of years a council member may serve in office. For example, council members newly elected in 2003 are able to serve 10 consecutive years in office as opposed to the limit of eight years set forth in Charter § 1137 because the two-year 2003 term no longer constitutes a full term under Local Law No. 27. Notably, as asserted by Claude Hillman, Executive Director of the 1999 New York City Charter Revision Commission and a member of the 2001 New York City Charter Revision Commission, “the twin concepts of term and term limits are interrelated and inseparable.” Thus, petitioners correctly assert that since incumbents are virtually assured of winning reelection, a council member’s term of office will equal the number of terms he or she is eligible to serve.
That Local Law No. 27 in fact extends the term of a council member’s office is further supported by its amendment of Charter § 25 (a), the charter section entitled “Election; term; vacancies,” which defines, inter alia, the length of council members’ terms. In this regard, had the City Council intended to amend term limits, it would have amended Charter § 1138, the provision in the Charter addressing term limits, rather than Charter § 25 (a). Thus, petitioners correctly assert that although Local Law No. 27 may have implications for term limits, the amendment nevertheless changes the Charter’s definition of a term, and therefore requires a mandatory referendum for its passage.
Statements made by the City Council prior to the enactment of Local Law No. 27 also support the argument that Local Law No. 27 amends the length of the terms of certain council members. Prior to the enactment of Local Law No. 27, the City Council assured the public that the amendment was not altering term limits. Specifically, in a release addressing this issue, the City Council stated that it was not attempting to repeal the 1993 Term Limit Law, and that “voters should decide any major change to the term limit law,” which “would have to be done by ballot initiative or voter approved charter revision” (Defining Qualification for Council Office: Addressing the Two Year Inequity, 2002 NY City Council Report). Therein, the *284 Council also asserted that the term limit section of the Charter would not be amended to accomplish the change in the law. Moreover, Council Speaker Miller was quoted as stating in July 2002 that “[a]ny structural change or repeal of term limits that runs against what people voted for should be put back for a voter referendum” (see Cardwell, Push to Revise Term Limits Gains Ground, New York Times, July 6, 2002, section B, at 1, col 5). Similarly, Council Member Perkins stated during a July 23, 2002 public hearing addressing proposed Local Law No. 27 that the amendment would affect “the number of consecutive years a council member may serve. It does not affect, however, the City’s term limits law, which means Council members are limited to serving two consecutive terms of office.” Finally, the “Purpose and Intent” section of Local Law No. 27 itself explicitly states that the amendment does not “change those disqualification provisions of Chapter 50 of the Charter [§§ 1137 and 1138] prohibiting any elected City official from serving more than two consecutive four-year terms.” While statements to the effect that the term limits section of the Charter would not be amended to accomplish the change in the law are technically accurate since Local Law No. 27 amended City Charter § 25 (a) and did not amend Charter § 1138, they nevertheless indicate the Council’s acknowledgment that the amendment did not affect the City’s term limits law.
Relying on Matter of Roth v Cuevas (158 Misc 2d 238, 246 [1993], affd without op 197 AD2d 369 [1993], affd for reasons stated below 82 NY2d 791 [1993]), petitioners argue that even assuming Local Law No. 27 were construed as merely changing term limits, its enactment nevertheless required a mandatory referendum because term limits are so interrelated to terms of office under the City Charter that any change in term limits necessarily changes the “term of an elective officer.” Petitioners also assert that the adoption of Local Law No. 27 without referendum ignores that term limit legislation in New York City has been historically left to the electorate. The court agrees.
As to petitioners’ former contention, Roth held, inter alia, that New York City was authorized to enact term limit legislation proposed in a voter initiative petition pursuant to the enabling language of Municipal Home Rule Law § 10 (1) (i) and (ii) (a) (1) and the virtually identical provisions of article IX, § 2 (c) of the New York State Constitution since the proposed legislation related to New York City’s “affairs” and/or “government” (Municipal Home Rule Law § 10 [1] [i]) and to the “term of office” of its “officers” (Municipal Home Rule Law § 10 [1] [ii] *285 [a] [1]) (id. at 243).[6] The court also held that the proposed legislation was a proper subject of public referendum pursuant to Municipal Home Rule Law § 37 (l)[7] — which “permits the enactment of local laws by voter referendum if the local law ‘amend[s] a city charter (however extensively),’ ” — since “[t]he proposed law, which clearly relate [d] to the ‘affairs’ and/or ‘government’ of the City [was] an ‘amendment’ within the meaning of Municipal Home Rule Law § 37” (id. at 243, quoting Municipal Home Rule Law § 37 [1]). Thus, Roth, despite the absence of discussion as to whether such legislation required a mandatory referendum, nevertheless provides support for petitioners’ contention that if the initial term limits law was a proper subject of a voter initiative petition by referendum because it related to “terms of office of a public officer,” any subsequent change to term limits also relates to “terms of office of a public officer,” necessitating a mandatory referendum.
As to petitioners’ latter argument, recent Charter history reveals that term limit legislation has been left to the discretion of the electorate. As noted above, the City’s current term limits laws were adopted by voter initiative petition in 1993. Further, when the City Council attempted to amend the Charter’s term limit provisions in 1996, it submitted the proposed amendment to the voters at the general election. Finally, in 2001, when the City Council attempted to amend term limits by legislation, the effort was abandoned when then Council Speaker Peter Vallone opposed the legislation as “contrary to the majority vote of the people.” As Mr. Millman confirms, “[s]ince the inception of term limits in New York City in 1993, changes to term limits have been treated as changes *286 to terms of office within the meaning of the New York City Charter, thereby requiring referenda under Charter Section 38.” He further asserts that “the 1999 and 2001 New York City Charter Revision Commissions recognized this reality when they declined to resubmit the term limits question to the electorate, which had already twice confirmed its strong support for them.” Finally, as noted above, the City Council acknowledged the electorate’s support for term limits by the statements it made assuring the public that Local Law No. 27 would not alter the current term limit laws.
The case law upon which respondents rely fails to support their claim that Local Law No. 27 amends term limits and therefore does not require a mandatory referendum. For example, in Matter of Benzow v Cooley (22 Misc 2d 208, 211 [1960] , affd 12 AD2d 162, 164 [1961], affd 9 NY2d 888, 889 [1961] ), the Supreme Court held that a local law permitting the mayor of Buffalo to run for a second four-year term of office did not require a mandatory referendum because “[t]he eligibility of a Mayor to succeed himself, if elected to another term, clearly would not change or lengthen the term of office” (id., 22 Misc 2d at 211). In affirming the lower court’s decision, the Appellate Division, Fourth Department, held that the amendment was not one which changed the term of an elective office since “[t]he term of Mayor under the new law is still four years” (id., 12 AD2d at 164). Thus, in Benzow the term of mayor was four years both before and after enactment of the local law. Here, in contrast, a “full term,” which constituted two years prior to the enactment of Local Law No. 27, constitutes two consecutive full terms of two years after the amendment’s enactment. Moreover, as petitioners note, in Benzow, the legislation amended the term limits provision of the Buffalo City Charter, unlike Local Law No. 27, which amended Charter § 25 (a), which defines the length of a term.
Respondent also relies upon Holbrook v Rockland County (260 AD2d 437, 438 [1999]), in which the Court held, inter alia, that two local laws prohibiting elected county officials from holding any other elected town or village office did not change the “terms of an elective office,” but only operated “to impose a new eligibility requirement or qualification for holding office, without changing a legislator’s four-year term of office,” and therefore did not require a mandatory referendum for its enactment. However, Holbrook is distinguishable from this case because it involved the practice of legislators holding two offices simultaneously, a circumstance not present here. More *287 over, as in Benzow, the legislation in Holbrook did not redefine term lengths, as does Local Law No. 27.
Furthermore, inasmuch as the opinion issued by the New York State Attorney General (1995 NY Ops Atty Gen No. I 95-29) and Haskell v Pattison (2001 NY Slip Op 40134 [U]) address the issue of term limit legislation, as opposed to legislation which changes the term of an elective official’s office, respondents’ reliance upon them is misplaced. For the same reason, the court need not address respondents’ contention that the City Council was not authorized under the Municipal Home Rule Law or the City Charter to submit Local Law No. 27 to referendum.
Next, petitioners maintain that Local Law No. 27 requires a referendum for its passage under Municipal Home Rule Law § 23 (2) (f) and Charter § 38 (5) since it abolishes “the powers of future Council members who would have been elected to fill the open seats of term-limited incumbents” by depriving them of the opportunity to serve; “curtails the powers of current Council members delayed from rising in seniority, responsibility and influence because these other incumbents remained [sic] in office”; and transfers more power to the senior incumbent council members, including the council speaker, who will benefit from the extra years of consecutive service. In this connection, petitioners argue that the Charter’s reference to “any power of an elective officer,” “should be construed to include not only the express statutory powers of Council members, but also those real powers so inherent * * * in Council governance.”
Respondents reply, in substance, that inasmuch as Local Law No. 27 does not impose direct limitations on the powers of council members, a referendum is not required for its passage under Municipal Home Rule Law § 23 (2) (f) and Charter § 38 (5); that petitioners have failed to show how any such tangible powers have been changed; and that petitioners’ claim as it relates to future council members is not recognizable under the Charter or the Municipal Home Rule Law. °
While the court finds that petitioners’ claim as to future council members is not cognizable under Municipal Home Rule Law § 23 (2) (f) and Charter § 38 (5) as these provisions refer only to “elective officers,” petitioners’ claims regarding current council members, including senior council members and the council speaker, have merit. In this regard, the court concurs with petitioners that respondents’ narrow interpretation of the Municipal Home Rule Law and the Charter fails to account for the political realities extant within the City Council, and finds *288 that Local Law No. 27 curtails the powers of junior council members and transfers those powers to senior council members and the council speaker.
Initially, as petitioners note, respondents themselves, in enacting Local Law No. 27, recognized that “[seniority and experience are significant factors in the capacity of [council] Members to represent and serve their districts.” Moreover, petitioner and former Council Member Golden asserts that “[traditionally, a Council member’s power and influence increases as his seniority grows. Senior Council members receive more powerful Council offices, committee assignments (including positions as Chair), increased salaries, larger staffs and budgets, and an increased ability to achieve larger budget appropriations (known as member items) for their specific districts.” In support of this assertion, Mr. Golden notes, inter alia, that (1) Council Speaker Gifford Miller and Deputy Majority Leader William Perkins, two council members who will benefit from Local Law No. 27, are “two of the Council’s most senior members and hold two [of] * * * the most powerful positions in the Council,” and (2) that other council members benefitting from Local Law No. 27 are members of the council’s most powerful committees. Moreover, according to Mr. Henry Stern, former Commissioner of the City’s Parks and Recreation Department and City Council Member-At-Large from Manhattan for nine years, senior council members remaining in office because of Local Law No. 27 also garner additional leadership positions because the “practice of the New York City Council has long been to reward senior members by making them chairs of the more powerful and influential committees.”
Similarly, Mr. Golden essentially asserts that as a result of Local Law No. 27, Mr. Miller, the current council speaker, will continue to “control virtually every aspect of the Council,” having the power “to appoint Council members to various committees of the Council, including the power to decide upon Chairs for each of those committees,” and “to disburse staff, increased budget allotments, and resources as he sees fit among the Council members.” According to Mr. Golden, these appointments and disbursements are highly coveted within the Council, and provide “strong incentive [for council members] to pledge their support to the Speaker and [to] tow the Speaker’s line.” Moreover, Mr. Stern asserts that the council speaker “also has the power to affect the redistricting of New York City” by appointing “five members to the New York City Districting Commission, subject only to the approval of his party *289 delegation,” and that those with redistricting authority “use that power to redraw district lines in a manner most advantageous to themselves and their political allies.”
While senior members gain more influence and leadership over council affairs, Mr. Stern asserts that “the progress of junior members to positions of leadership and influence will be somewhat delayed because of the two-year term extension created for those senior Council members by Local Law 27.” In this regard, he notes that by permitting seven council members — whose reelection is virtually assured — to run for two additional years in office, junior council members will be delayed from ascending to those positions. Similarly, by permitting the council speaker to run for an additional two years, his reelection, also virtually assured, will frustrate junior council members who would have competed for the speakership from obtaining the powers the speaker now possesses.
Under the circumstances, there is sufficient evidence in the record from which the court may conclude that by effectively affording certain council members affected by Local Law No. 27 two additional years in office, Local Law No. 27 abolishes or curtails the powers of junior council members and transfers those powers to senior council members and the council speaker. In light of the foregoing, the enactment of Local Law No. 27 without referendum was also invalid pursuant to Municipal Home Rule Law § 23 (2) (f) and Charter § 38 (5).
Petitioners next argue that Local Law No. 27 violated Charter § 1137, which provides, in pertinent part, that it is “the public policy of the city of New York to limit to not more than eight consecutive years the time elected officials can serve as * * * council member so that elected representatives are ‘citizen representatives’ who are responsive to the needs of the people and are not career politicians.” The court agrees.
Charter § 1137 sets forth a clear and express declaration of intention by the City of New York to limit to not more than eight consecutive years the time elected officials may serve in office, which serves the legitimate goals of the City in assuring its electorate that elected representatives remain dedicated and responsive to the needs of the people. Local Law No. 27, however, clearly contravenes Charter § 1137, since it will allow council members newly elected in 2003, and every 20 years thereafter, to serve 10 consecutive years in office, and will permit council members elected in special elections to fill vacancies to serve more than 10 consecutive years in office. It is true, as respondents note, that the enactment of Local Law *290 No. 27 did not change the rule that the number of years served by a council member to fill a Council vacancy does not count toward the number of terms which that council member may serve. However, as petitioners properly counter, the rule is meant to address the special circumstances when serving an extended term is unavoidable; a rationale which does not underlie the enactment of Local Law No. 27.
Moreover, the enactment of Local Law No. 27 without referendum is inconsistent with the historical practice of enacting term limit legislation by referendum (Millman affidavit If 15). In this regard, Charter § 1137 clearly represents the will of the people, having been placed on the ballot in 1993 by voter initiative petition and then enacted by a 60% margin. Further, in 1996, a proposal to extend term limits was placed on the ballot for voter approval, which was rejected. Finally, the Council itself acknowledged the public policy set forth in Charter § 1137 when it withdrew its proposal to amend term limits without referendum in 2001, and when, prior to the enactment of Local Law No. 27, it acknowledged that voters should decide any major change to term limits.
While respondents argue that Charter § 1137 creates no enforceable rights, its adoption simultaneously with Charter § 1138, its clear purpose of promoting citizen representatives as opposed to career politicians, and the historical practice of enacting term limit legislation via referendum, clearly suggest the contrary (see 97 NY Jur 2d, Statutes § 14).
Moreover, and perhaps most significantly, respondents’ interpretation of Local Law No. 27 as the mere extension of term limits — taken to its logical conclusion — places within the Council the unchecked authority to extend term limits beyond two consecutive terms of office, which is clearly proscribed by both Charter §§ 1137 and 1138, and which respondents readily concede was the result of the enactment. For this reason, and the reasons advanced above, the court declines respondents’ invitation to interpret Local Law No. 27 in a manner that manifestly transgresses the express will of the electorate.
Lastly, petitioners contend that the enactment of Local Law No. 27 violated Municipal Home Rule Law § 11 (2) (a) and (b) and Charter § 40 (1). The court concurs. Municipal Home Rule Law § 11 (2) (a) and (b) provide, in pertinent part, that
“ [n] otwithstanding any provision of this chapter, the legislative body of a * * * city * * * shall not be authorized by this chapter to adopt any local law which:
*291 “a. [a] mends the charter of the * * * city * * * contrary to any provisions of such charter regulating its own amendment [or which]
“b. [t]he legislative body is by provision of the charter prohibited to adopt.”
City Charter § 40 (1) provides, in pertinent part, that the City Council is authorized to amend the Charter by “local law adopted in accordance with the provisions of this charter.” Here, because Local Law No. 27 was enacted without referendum, it was not adopted in accordance with Charter § 38, and therefore violated Charter § 40 (1). Similarly, because under Charter § 38 the Council was prohibited from enacting Local Law No. 27 without referendum, it violated Municipal Home Rule Law § 11 (2) (a) and (b), respectively, by amending the Charter in a manner that was “contrary to any provisions of such charter regulating its own amendment” (see Giuliani v Council of City of N.Y., 181 Misc 2d 830, 835 [1999] [statute invalidates any local law inconsistent with that municipality’s charter]) and by enacting a local law which “the legislative body is by provision of the charter prohibited to adopt” (see Mahler v Gulotta, 297 AD2d 712, 716 [2002] [statute prevents legislative body from adopting a local law that it is otherwise authorized to adopt pursuant to the Municipal Home Rule Law if the charter prohibits its adoption]).
In sum, the court finds that the enactment of Local Law No. 27 without referendum violated Charter § 38 (4) and (5), and Municipal Home Rule Law § 23 (2) (e) and (f). In addition, the court finds that Local Law No. 27 was enacted in violation of Charter §§ 1137 and 40 (1), and Municipal Home Rule Law § 11 (2) (a) and (b). Accordingly, the petition is granted and the cross motion is denied.

. Submission of a proposed law to the voters for a direct popular vote.

. City Charter § 25 (former [a]), entitled “Election; term; vacancies,” provided that: “The council members shall be elected at the general election in the year nineteen hundred seventy-seven and every fourth year thereafter, and the term of office of each council member shall commence on the first day of January after the election and shall continue for four years thereafter; provided, however, that the council member elected at the general election in the year two thousand and one and at the general election in every twentieth year thereafter shall serve for a term of two years commencing on the first day of January after such election; and provided further than an additional election of council members shall be held at the general election in the year two thousand and three and at the general election in every twentieth year thereafter and that the members elected at each additional election shall serve for a term of two years beginning on the first day of January after such election.”

. City Charter § 1138, entitled “Term Limits,” provides: “Notwithstanding any provision to the contrary contained in this charter, no person shall be eligible to be elected to or serve in the office of mayor, public advocate, comptroller, borough president or council member if that person had previously held such office for two or more full consecutive terms (including in the case of council member at least one four-year term), unless one full term or more has elapsed since that person last held such office; provided, however, that in calculating the number of consecutive terms a person has served, only terms commencing on or after January 1, 1994 shall be counted.”

. The two two-year terms serve to accommodate redistricting after a decade’s census and to reconcile the election cycle of these council offices with the regular municipal four-year election scheme.

. One of these council members replaced Council Member Angel Rodriguez, who resigned his seat in August 2002. She will be eligible to serve 11 consecutive years in office since she completed the one year remaining in Mr. Rodriguez’ term, and is eligible to run for reelection in 2003, 2005 and 2009. The other council member replaced petitioner Golden, who relinquished his office in 2003 because of his recent election to the New York State Legislature. This council member will be eligible to serve 10s/4 consecutive years in office since he will be permitted to serve out the remainder of Mr. Golden’s 2001-2003 term, and will then be eligible to run for reelection in 2003, 2005, and 2009.

. Municipal Home Rule Law § 10 (1) (i) provides that “every local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government.” Municipal Home Rule Law § 10 (1) (ii) (a) (1) provides that “every local government * * * shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: a. A county, city, town or village: (1) The powers, duties, qualifications, number, mode of selection and removal, [and] terms of office * * * of its officers and employees.” Article IX, § 2 (c) of the New York Constitution contains virtually identical provisions.

. Municipal Home Rule Law § 37 (1) provides, in pertinent part, that “[a] local law amending a city charter (however extensively) * * * also may be adopted in accordance with the provisions of this section.”